## THE MAYWOOD COMPANY *et al.*

### *v.*

## THE VILLAGE OF MAYWOOD *et al.*

*Filed at Ottawa May 15, 1886.*

1. DEDICATION *to the public—as to the manner in which it may be made.* A dedication may be made to the public by grant or other written instrument, or it may be evidenced by acts and declarations, without writing. It may be made by a survey and plat alone, without any declaration, either oral or on the plat, where it is evident, from the face of the plat, that it was the intention of the proprietor to set apart certain grounds for the use of the public. No particular form is required to constitute a dedication. It is purely a question of intention.

2. SAME—*where the legal title may reside—village not yet incorporated.* To constitute a dedication of a block of ground to be used as a public park, in a village laid out and platted, it is not necessary that the legal title shall pass from the proprietor of the land, nor that the grantee of the use shall be in existence. It is sufficient if the party laying out and platting the ground has assented to the use of the block as a park, and that the inhabitants of the village have actually enjoyed that use in such a way and for such a time as that the public accommodation and private rights will be materially affected by an interruption of the enjoyment.

3. SAME—*statutory and common law dedication—distinguished.* The difference between a statutory and common law dedication is, that the first vests the legal title in the ground set apart for public purposes, in the municipal corporation, in trust for the public, while the other leaves the legal title in the original owner, charged, however, with the same rights and interests in the public which it would have if the fee was in the corporation.

4. SAME—*what essential to a valid statutory dedication, under act of 1845—as to a proper description.* Under the statute of 1845, in force in

| | |
|---|---|
| 118 | 61 |
| 131 | 496 |
| 118 | 61 |
| 136 | 285 |
| 36a | 612 |
| 118 | 61 |
| 150 | 309 |
| 152 | 572 |
| 118 | 61 |
| 157 | 134 |
| 118 | 61 |
| 58a | 457 |
| 118 | 61 |
| 163 | 368 |
| 163 | 407 |
| 118 | 61 |
| 169 | 403 |
| 169 | 417 |
| 171 | 518 |
| 118 | 61 |
| 174 | 170 |
| 76a | 543 |
| 118 | 61 |
| 176 | 470 |
| 118 | 61 |
| 184 | 212 |
| 184 | 215 |
| 185 | 329 |
| 118 | 61 |
| 187 | ¹514 |
| 118 | 61 |
| 197 | ¹245 |
| 197 | ¹¹247 |
| 118 | 61 |
| 199 | ¹284 |
| 118 | 61 |
| 200 | ³515 |
| 200 | ¹516 |
| e200 | ⁷521 |
| 201 | ¹286 |
| 118 | 61 |
| 208 | ¹ 42 |
| 208 | ² 43 |
| 118 | 61 |
| 210 | 329 |

1870, it is necessary to a valid dedication of ground to the public, by desig-
nation on a plat laying out land into streets, blocks and lots, that the size
and dimensions or boundaries of the ground intended for the public use
shall be shown upon the plat. If the plat fails to give the dimensions of
the streets, and of a public park indicated as a part of a block, it will not be
completely valid as a statutory dedication.

5.   SAME—*of a dedication not good under the statute, but good at com-
mon law—of public and private rights thereunder.*   Where a party laying
out a village, and platting the same, makes a dedication of a portion of the
land for streets, and also for a public park, which is not good, under the
statute, to convey the legal title to the public, but which is good at common
law, the legal title of the grounds dedicated will remain in the original pro-
prietor, burdened with the right of the public to use the same, and whatever
rights the public or the residents of the village acquired in the dedication,
will pass to and become vested in the village, when subsequently incorpo-
rated, as the legal representative of the public.

6.   SAME—*sale of lots by plat—implied covenant to purchasers.*   If a
land owner lays out a town, making and exhibiting a plat or plan thereof,
showing a certain portion set apart for a public park, and other parts for
streets, the sale and conveyance of lots according to such plan implies a grant
or covenant to the purchasers that the streets and other public places, indi-
cated as such upon the plat, shall be forever open to the use of the public,
free from all claim or interference of the proprietor inconsistent with such use.

7.   SAME—*acceptance by the public—how manifested.*   Where land in a
village is dedicated to the public by the proprietor, laid out into streets and
lots and blocks before the village is incorporated, the acceptance of the dedi-
cation by the public is indicated by the actual use of the ground for the
purposes intended. If the village is afterward incorporated, its acceptance
is shown by its demand of the possession of the ground and for a conveyance
of the title, and its failure to improve the same, after refusal of the original
proprietor to yield its control, is not an evidence of non-acceptance.

8.   SAME — *putting incumbrance upon land after dedication—and of
notice of dedication to incumbrancer.*   After the dedication of a block in a
village, to the public, for a park, and the sale and conveyance of lots on the
faith of such dedication, the original proprietor, though still holding the
legal title to the block dedicated, will not be allowed to divert his trust by
mortgaging the property; and if he does mortgage the same to parties having
notice of the public interest therein, a court of equity will set the same aside
at the suit of the corporate authorities and lot owners interested.

9.   The recorded plat of a village showed a certain block therein was
marked as a public park, and its use by the public was constant, open and
notorious up to the time the original proprietor executed a trust deed thereon
to secure certain bonds issued by him: *Held,* that such user by the public,
and the record of the plat, afforded notice of the public rights in the property,
to the holders of the bonds under the trust deed.

10. CHANCERY—*to prevent the perversion of a public trust—as, in the case of a public park.* Where the original proprietor of land laid out into a village, after a common law dedication of a block in the village for a public park, in violation of the trust under which he holds the legal title, mortgages such block to parties having notice of the public rights therein, a court of equity has jurisdiction of a bill to set aside the mortgage and thereby prevent a threatened perversion of the trust, and nuisance tending to deprive the public of the full and free use of the park.

11. PARTIES—*to bill to prevent obstruction to use of public park.* Residents of an incorporated village may join in a bill with the village, to prevent any obstruction to the use of a public square dedicated for a park, and to have a mortgage given thereon by the original proprietors, set aside, and to enjoin the mortgagor and the mortgagee from interfering with the free use of the square as a public park.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Messrs. WILSON & MOORE, and Mr. WILLIAM GARNETT, for the appellants:

The Maywood Company never offered to dedicate the premises in question to the public; but if the plat should be construed as an offer to dedicate, it was withdrawn before it was accepted, an acceptance being essential. *Littler* v. *City of Lincoln*, 106 Ill. 368; *Town of Princeton* v. *Templeton*, 71 id. 71; *Baker* v. *Johnson*, 21 Mich. 319; *Lee* v. *Village of Sandy Hill*, 40 N. Y. 443; *Lee* v. *Lake*, 14 Mich. 18.

The demurrer to the bill should have been sustained. The bill sets forth no equitable grounds of relief. The action of ejectment was the appropriate remedy to try the title to the square. It is an ejectment bill, and the court had no jurisdiction. *Chicago* v. *Wright*, 69 Ill. 322.

The village, Small and Hubbard could not properly join in the bill, and the demurrer should have been sustained on this ground. *Chicago* v. *Union Building Association*, 102 Ill. 379.

For any obstructions to streets or public grounds, not resulting in special injury to the individuals, the public only can

complain. *McDonald* v. *English*, 85 Ill. 236 ; *Smith* v. *Boston*, 7 Cush. 254; *Castle* v. *Berkshire*, 11 Gray, 26 ; *Brightman* v. *Fairhaven*, 7 id. 271 ; *Paul* v. *Carver*, 24 Pa. St. 207 ; *Brady* v. *Shinkle*, 40 Iowa, 576 ; *Barr* v. *Oskaloosa*, 45 id. 275.

Mr. Mason B. Loomis, for the appellees :

As a general rule, where a party has a complete remedy at law, equity will not interfere, but will leave him to seek his rights through his legal remedy. But to this rule there are exceptions, as, where the relief in chancery is more complete and effectual. *Morris* v. *Thomas*, 17 Ill. 112 ; *Fraser* v. *Miller*, 16 id. 48 ; *Haworth* v. *Taylor*, 108 id. 276.

If this was a bill to quiet title or remove a cloud, the point would be well taken ; but such is not the case. *Gage* v. *Parker*, 103 Ill. 534 ; *Gage* v. *Rohrbach*, 56 id. 262 ; *Reed* v. *Tyler*, id. 288 ; *Gage* v. *Chapman*, id. 311 ; *Booth* v. *Wiley*, 102 id. 114.

There is no positive general rule in equity as to what is a misjoinder of parties in any given case. Story's Eq. Pl. sec. 539 ; *Baird* v. *Jackson*, 98 Ill. 92 ; 1 Daniell's Ch. Pr. (4th ed.) 334, 445.

Where there is an identity of interest in the question involved, and in the relief sought, and the separate injury sustained by each complainant is produced by the same cause or wrongful act, there is no misjoinder. *Hickling* v. *Wilson*, 104 Ill. 58 ; *Gage* v. *Chapman*, 56 id. 311.

It has been held that two or more persons having separate and distinct tenements, which are injured or rendered uninhabitable by a common nuisance, or which are rendered less valuable by a private nuisance which is a common injury to the tenements of both, may join in a suit to restrain such nuisance. 1 Daniell's Ch. Pr. 303, note 3 ; *Murray* v. *Hay*, 1 Barb. Ch. 59 ; *Putnam* v. *Sweet*, 1 Chand. (Wis.) 286.

Where privileges of a public nature, and yet beneficial to private estates, are secured to the proprietors contiguous to public squares or other places dedicated to public uses, the

due enjoyment of them will be protected against encroachments, by injunctions.     2 Story's Eq. Jur. sec. 927; *Hills* v. *Miller,* 3 Paige, 254; *Corning* v. *Loweron,* 6 Johns. Ch. 439.

The erection of a private building upon land reserved for a public square, and which has been illegally sold by the public authorities, is a nuisance of such irreparable nature as to give a court jurisdiction to grant a perpetual injunction. *Commonwealth* v. *Rush,* 14 Pa. St. 186; 2 Story's Eq. Jur. sec. 926 a.

The corporate authorities of a town or village are proper parties to enjoin a public nuisance, and private persons especially injured by a nuisance of such a nature may join with the corporate authorities in filing the bill.     High on Injunctions, sec. 755; *Trustees* v. *Cowen,* 4 Paige, 510; *Cincinnati* v. *White's Lessees,* 6 Pet. 431; *Attorney General* v. *Blount,* 4 Hawk. (N. C.) 384; *Jacksonville* v. *Railway Co.* 67 Ill. 544; *Zearing* v. *Raber,* 74 id. 413.

A dedication may be made by grant or written instrument. It may be evidenced by acts and declarations without writing, no particular form being required to establish its validity, it being purely a question of intention.     *Godfrey* v. *City of Alton,* 12 Ill. 30; *Marcy* v. *Taylor,* 19 id. 634; *Waugh* v. *Leech,* 28 id. 488; *Warren* v. *Jacksonville,* 15 id. 236; *Dimon* v. *People,* 17 id. 422; *Smith* v. *Town of Flora,* 64 id. 93.

If the owners of land agree upon a place, and make a survey and lay off ground for public use, and make sales in reference thereto, it amounts to a dedication of such ground to the public.     A map is not essential to the validity of the dedication.     *Godfrey* v. *City of Alton, supra; Canal Trustees* v. *Haven,* 11 Ill. 554; *Gridley* v. *Hopkins,* 84 id. 528.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill, brought, in the Superior Court of Cook county, by appellees against appellants, for the purpose of having a certain square in said village, known as block 58, (except cer-

tain hotel grounds in the north-west corner thereof) declared to be a public park; and praying, that appellant company surrender the control and management thereof to the trustees of said village, and that a trust deed, executed thereon by the company to Botsford, trustee, be set aside, and that appellants be enjoined from interfering with the use of said square, as a public park, by the said village and its residents and lot owners, and from selling or conveying the same, or taking any steps to foreclose the trust deed thereon, etc. The beneficiaries in the trust deed were made parties, under the name of "Unknown Owners."

The record discloses such facts, as must be held to have constituted a common law dedication of the square in question, by the Maywood Company, to the public, for the purposes of a "park."

By "An act to incorporate the Maywood Company," passed by the legislature on April 6, 1869, certain persons were "constituted a body politic and corporate, by the name of the Maywood Company, for the purpose of purchasing land in the township of Proviso, in Cook county, and improving the same as a suburban village, by shade trees, parks, drainage, and buildings of all classes, for educational, religious, residence, manufacturing, mercantile and other purposes, and, by that name, may sue and be sued, etc.; may purchase, hold, lease, mortgage, alienate, sell and convey real and personal estate, and generally have and exercise all the rights and privileges of corporations, for the purpose of improving, benefiting, beautifying and developing the said village of Maywood."

In the spring of 1869 the company purchased over five hundred acres in the town of Proviso, and, in that year, issued to the public a printed pamphlet, setting forth the advantages of Maywood, as a place of residence, and announcing, under the heading of "Public Park," that the land, afterwards called block 58 and containing about sixteen acres, would be im-

proved and ornamented as a park, and would be supplied with lakes and bays for boating and skating, with bridges, groves, walks, drives, shrubbery, arbors, swings, grottoes, etc., and other attractions for the public.

In March, 1870, the company made a subdivision or plat of five hundred and sixty acres, entitled "Maywood," to which is attached the usual surveyor's certificate, and to which is also attached a certificate of acknowledgment, showing that it was duly acknowledged by the company on March 8, 1870. This plat was recorded in the recorder's office of Cook county on March 11, 1870. The original plat and the record thereof were destroyed in the great fire of October 9 1871, so that some of the figures, measurements and other details, which were probably shown on the original, do not appear upon the copy, introduced in evidence. But the plat, as shown by the proof in the record, contained blocks numbered from 53 to 265 inclusive, separated and bounded by streets. The names of the streets are given. Upon the face of the plat is shown a certain space or block, marked "58," upon which are written the words, "Maywood Park." Block 58 or "Maywood Park" appears from the plat itself to be bounded on the north by the Galena railroad track and First street, on the south by Second street, on the west by Fifth avenue and on the east by First avenue and the Des Plaines river. The name of the square in question and its boundaries are, thus, clearly indicated upon the plat itself. But the width and length of the streets and the dimensions of the blocks are not given.

In 1870, the company issued to the public another printed pamphlet, giving a history of Maywood, in which, under the head of "Inducements to buy and build at Maywood," it is stated, that "the town now * * * has a beautiful park of sixteen acres." This pamphlet has numerous pictures of different portions of "Maywood Park," a "View from north shore of lower lake in Maywood Park," "View of lower lake in Maywood Park," showing boats and swans upon the waters

of the lake, and groves and walks along its shores, pictures of the "Music Stand," the "Well House," the "Observatory," the "Rustic Bridge" over "Put-in-Bay," all in Maywood Park. This pamphlet and the printed copies of abstracts of title, furnished to the purchasers of lots, contain copies of the plat of Maywood, with the words, "Maywood Park," written across the face of the space, designated as block "58." Circulars were issued and posted in the vicinity and in Chicago, showing the park and the improvements therein.

In March 1871, the company issued another pamphlet to the public, in which it is stated, that "the park is already a matter of pride to the village," and that, "as its use is given to the public as pleasure grounds, the directors have not inventoried either the land (sixteen acres), or improvements, in the assets of the company." For years, the park was constantly used by the residents of the village for public purposes. It was not assessed for purposes of taxation. From 1870 to 1884, when this suit was begun, the population of the village has varied from four hundred to eight hundred. This population has settled there, and lots have been purchased and homes established there, upon the strength of the company's representations, that, among the advantages of the village, as a place of residence, would be the use of block 58, as a park, for the benefit of all the citizens and residents.

The appellee, Small, obtained a deed from the company of a lot in Maywood about the year 1870, and, at the time of his purchase, the president of the company presented him with copies of the pamphlets of 1869 and 1870, above referred to. The north-east corner of his lot is diagonally opposite the square, marked upon the plat, as Maywood Park, and looks out upon that square. He swears, that he always supposed it was a public park. Appellee, Hubbard, swears, that he is a resident of Maywood; that he purchased property there in 1874; that the square in question was then open

for the public, that it was originally fitted up in nice shape, and had always been open and used as a park; that he saw the pamphlets and posters and obtained them from the company's office. Other witnesses testify to their purchasing lots there, as far back as 1871, and that the square in question was laid out with walks and lakes, and was used, as a park, by the inhabitants, and the general public.

On September 30, 1881, the company made a trust deed to Botsford, as trustee, to secure certain bonds. On October 31, 1881, the village of Maywood was organized under the general act for the incorporation of cities and villages. The officers and trustees of the village have demanded of the Maywood Company the control and management of the park, and have requested from the company a conveyance of the title to the park. The refusal of the company to accede to such demand and request has led to this litigation.

The facts, above recited, indicate an intention, on the part of the Maywood Company to dedicate block 58, (with the exception of the hotel and hotel grounds, covering the north 168 feet of the west $287\frac{55}{100}$ feet of said block,) to the public for the purposes of a park. A dedication may be made by grant or other written instrument, or it may be evidenced by acts and declarations, without writing. No particular form is requisite to the validity of a dedication. It is purely a question of intention. A dedication may be made by a survey and plat alone, without any declaration either oral or on the plat, when it is evident from the face of the plat, that it was the intention of the proprietor, to set apart certain grounds for the use of the public. *Godfrey* v. *City of Alton,* 12 Ill. 30; *Warren* v. *Town of Jacksonville,* 15 id. 236; *Waugh* v. *Leech,* 28 id. 488; *Smith* v. *Town of Flora,* 64 id. 93.

"The difference between a statutory and common law dedication is, that one vests the legal title to the ground set apart for public purposes in the municipal corporation, in trust for the public, while the other leaves the legal title in the

original owner, charged, however, with the same rights and interests in the public, which it would have, if the fee was in the corporation." (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25.) In the case at bar, the legal title to block 58 continued in the Maywood Company, but charged with the right of the public to use the block for, a public park. It is true, that the village was not incorporated until October 1881, and, therefore, there was no organized municipality to accept the dedication of the park, during the eleven years from 1870, when the park was created, and the plat, pointing it out, was recorded, to 1881, when the incorporation took place. During this period, however, the acceptance of the dedication by the public was indicated, so far as it could be, by the actual use of the block, for those purposes of pleasure and recreation, for which public parks are laid out. (*Smith* v. *Town of Flora, supra; Rees* v. *City of Chicago*, 38 Ill. 322.) When the village was finally incorporated, the acceptance of the dedication was manifested by the demand, on the part of the proper authorities, for the possession of the park and for a conveyance of the title. Inasmuch as the Maywood Company has refused to yield the control of the park to the village trustees, the failure of the latter to take any steps towards its improvement should not be urged, as an evidence of their non-acceptance of the dedication.

As already stated, the plat in this case does not give the length and width of the streets, or of the blocks, nor the dimensions of the portion of block 58, which is devoted to hotel purposes. In these respects, it does not comply with the act of 1845, which was in force in 1870, when the plat was made, and, therefore, may not be completely valid, under the technical requirements of the law. (*Village of Winnetka* v. *Prouty*, 107 Ill. 218.) If it had been free from the defects here indicated, the recording of it would have constituted a statutory dedication, and the fee of the park, as well as of the streets, would have remained in abeyance, subject to vest

in the village corporation, as soon as it was created. (*Canal Trustees* v. *Haven,* 11 Ill. 554; *Waugh* v. *Leech, supra; Gebhardt* v. *Reeves,* 75 Ill. 301; *Village of Princeville* v. *Auten,* 77 id. 325; *Village of Brooklyn* v. *Smith,* 104 id. 429.) Upon the incorporation of the village in 1881, the fee of this park, theretofore in abeyance, would have vested in the village at once, if the plat had been executed in conformity with the statute in all particulars. As it was, there was such a dedication of the square, as that the fee thereof, which remained in the Maywood Company, as the original proprietor, was burdened with the right of the public to use it for a park. (*Manly* v. *Gibson,* 13 Ill. 308.) Whatever rights the public, or the residents of the village, when in an unorganized condition, acquired, by virtue of the dedication, became vested in the village, as the legal representative of such residents, after the incorporation took place.

To constitute a dedication, it was not necessary, that the legal title should pass from the Maywood Company, nor that the grantee of the use should be in existence. It is sufficient, that the company has assented to the use of the land, as a park, and that the inhabitants of the village have actually enjoyed that use, in such a way and for such a time, as that the public accommodation and private rights will be materially affected by an interruption of the enjoyment. *City of Cincinnati* v. *White's Lessee,* 6 Peters, 431.

"If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plats of spare ground    *    *    *    and sells the lots with reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage, which the plan represents, as belonging to them, as a part of the town, or to their owners, as citizens of the town.    *    *    *    The sale and conveyance of lots in the town and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated, as such, upon

the plan, shall be forever open to the use of the public free from all claim or interference of the proprietor, inconsistent with such use." *Zearing* v. *Raber*, 74 Ill. 409.

The Maywood Company has persuaded over four hundred people to settle in their village and buy lots of them, by holding out, among other inducements, the inducement, that this square should be kept open and used as a public park. The law considers their conduct in the nature of an *estoppel in pais*, which precludes them from revoking their dedication. To do so would be a violation of good faith to the inhabitants of the village. The company holds the legal title as trustee, for the use and benefit of the village and its citizens. It can not be allowed to divert its trust by mortgaging the property. A mortgage of it may lead to a sale and conveyance of it to private individuals, and an appropriation of it by them to such purposes, as they may desire. *City of Jacksonville* v. *Jacksonville Ry. Co.* 67 Ill. 540.

The holders of the trust deed, which has been executed upon this block 58, must be held to be affected with notice of the interests of the public therein. Its use by the public has been constant and open and notorious, and the plat, upon which it is designated, as "Maywood Park," was on record, when the trust deed was made, and was fully shown upon all the abstracts of title.

A court of equity has jurisdiction to entertain the bill, filed in this case. As a foreclosure of the trust deed would probably result in the ownership of the "park" by private parties, there was a threatened perversion of the trust, upon which the property was held. Equity will interpose to prevent the perversion of a trust. (*City of Jacksonville* v. *Jacksonville Ry. Co. supra.*) Again, the evidence shows a threatened nuisance, tending to deprive appellees and others of the full and free use of this park, as they were entitled to have it used. This is a well recognized ground for equitable interposition. *Zearing* v. *Raber, supra.*

The objection of multifariousness or misjoinder of complainants we do not regard, as well taken to the bill. Small and Hubbard, as residents of the village, have a common interest with each other and with the village itself, in preventing any obstruction to the use of the public square for the purposes of a park. (*Trustees of Watertown et al.* v. *Cowen,* 4 Paige, 510; *Green et al.* v. *Oakes,* 17 Ill. 251; *Gage* v. *Chapman,* 56 id. 311; 2 Story's Eq. Jur. secs. 924, 924 a.) They are, therefore, properly joined with the village, as complainants.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*