[No. 9399.  In Bank.—March 23, 1887.]

TOWN OF SAN LEANDRO, RESPONDENT, *v.* EDWARD J. LE BRETON, ADMINISTRATOR OF THE ESTATE OF THEO. LE ROY, DECEASED, ET AL., APPELLANTS.

DEDICATION — MAP OF TOWN SITE — DESIGNATION OF STREETS AND SQUARES. — Where an owner of land lays off a town or village thereon, and makes a map of the town site, showing it to be divided into streets, alleys, blocks, and lots, and then sells lots with reference to such map, he thereby makes an irrevocable dedication of the space represented on

the map as streets to the use of the public. And if there be public squares or plazas represented on the map, the same rule applies to them, and dedication thereof may be established in the same manner.

ID. — ACCEPTANCE BY TOWN AUTHORITIES. — In such a case, to make the dedication complete no formal acceptance by the town authorities is necessary. Until such acceptance, the owner of the land holds the title to the property dedicated in trust for the public.

ID. — DEDICATION OF PUBLIC SQUARE — COUNTY AND TOWN PURPOSES. — The designation of a square laid off upon the map as "Court Square" does not have the effect to limit the dedication thereof to the use of the public for county as distinguished from town purposes.

ID. — ASSESSMENT OF PUBLIC SQUARE TO PRIVATE PERSON — ESTOPPEL. — The fact that the square, after its dedication to the public, was assessed for town and county purposes to a person in the adverse possession thereof, and the taxes thereon were paid by him, does not impair the rights of the public, or estop the town from claiming under the dedication as against him.

ID. — ADVERSE OCCUPATION OF STREET OR SQUARE. — The right to a street or square dedicated to public uses cannot be acquired by adverse occupation as against the public.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Pillsbury & Blanding*, and *B. S. Brooks*, for Appellants.

The dedication was inoperative, because there was no acceptance by the public, or use for the purposes intended. (*San Francisco* v. *Canavan*, 42 Cal. 553; *Bissell* v. *N. Y. C. R. R. Co.*, 26 Barb. 634; *Attorney-General* v. *M. & E. R. R. Co.*, 19 N. J. Eq. 391; *Tillman* v. *People*, 12 Mich. 401; *People* v. *Jones*, 6 Mich. 176; *Fisk* v. *Town of Havana*, 88 Ill. 208; *State* v. *Tucker*, 36 Iowa, 485; *West-fall* v. *Hunt*, 8 Ind. 174; *Niagara Falls etc.* v. *Bachman*, 66 N. Y. 261; *Sanford* v. *City of Meridian*, 52 Miss. 389; *Parsons* v. *Trustees etc.*, 44 Ga. 529; *David* v. *New Orleans*, 16 La. Ann. 404; S. C., 79 Am. Dec. 586.) The plaintiff is estopped to maintain the action. (*Knight* v. *Heaton*, 22 Vt. 480; *Alve's Ex'rs* v. *Town of Henderson*, 16 B. Mon. 131; *City of Pella* v. *Scholte*, 24 Iowa, 283; S. C., 95 Am. Dec. 729; *Callaway Co.* v. *Nolley*, 31 Mo. 393; *Com-*

*missioners* v. *Taylor*, 2 Bay, 282; S. C., 1 Am. Dec. 647.)
When land once dedicated to public use has been for
many years in the occupancy of the owner, that circum-
stance is evidence that the claim of the public is waived.
(*Lee* v. *Lake*, 14 Mich. 12; S. C., 90 Am. Dec. 220; *Baker*
v. *Johnston*, 21 Mich. 320; *Briell* v. *Natchez*, 48 Miss. 423.)
The taxation of the square by the town operates as an
estoppel. (*Adams County* v. *B. & M. R. R. Co.*, 39 Iowa,
508; *Audobon Co.* v. *Am. Emigrant Co.*, 40 Iowa, 466;
*County etc.* v. *Am. Emigrant Co.*, 93 U. S. 124; *Swain* v.
*Seamens*, 9 Wall. 254; *Wilder* v. *St. Paul*, 12 Minn. 116.)

*H. F. Crane*, for Respondent.

A formal acceptance by the town was not necessary to
complete the dedication. (*Derby* v. *Alling*, 40 Conn. 410;
*Jersey City* v. *M. & E. Banking Co.*, 12 N. J. Eq. 547;
*Den* v. *Dummer*, 20 N. J. L. 86; *Trustees of M. E. Church* v.
*Hoboken*, 33 N. J. L. 13; *Ruch* v. *Rock Island*, 5 Biss. 95;
*Doraston* v. *Payne*, 2 Smith's Lead. Cas. 224; *Oswald* v.
*Grim*, 22 Tex. 94; *Preston* v. *Navasota*, 34 Tex. 684; *Zear-
ing* v. *Raber*, 74 Ill. 409; *Shun* v. *Stothart*, 29 La. Ann.
632; *Hardy* v. *Memphis*, 10 Heisk. 127; *Henshaw* v.
*Hunting*, 1 Gray, 203; *Grogan* v. *Hayward*, 6 Saw. 498;
*Huber* v. *Gazely*, 18 Ohio, 18.)

BELCHER, C. C.—This is an action to determine
whether a certain block of land, situate within the cor-
porate limits of the town of San Leandro, in Alameda
County, is a public square, dedicated to the use of the
town and the inhabitants thereof, or is owned and right-
fully occupied by the defendants.

In the court below the plaintiff prevailed, and the ap-
peal is by the defendants from the judgment and an
order denying a new trial.

It appears from the record that in 1854 the widow and
children of José Joaquin Estudillo were the owners of the
rancho de San Leandro, situate in Alameda County, and

embracing about six thousand acres of land, and were desirous of founding a town or village thereon. As a site for the proposed town or village, they selected about two hundred acres of the rancho, which included the residence of the owners, and is the present site of the town of San Leandro, and caused it to be surveyed into streets, blocks, and lots. They then caused a map of the survey to be made, on which the streets were represented and named, and the blocks, with the exception hereinafter noted, were numbered and divided into lots. The blocks were three hundred feet square, and were designated by numbers from 1 to 66 inclusive, and each full block was divided into fourteen lots, designated by the letters of the alphabet, A to N inclusive. One of the blocks—the one bounded by Davis Street, Estudillo Street, Ward Street, and Martinez Street, and which is here in controversy—was marked "Court Square" on the map, and was not numbered or divided into lots. The map was certified as a plat of the town, and was filed by the owners of the land in the office of the recorder of Alameda County on the twenty-seventh day of February, 1855, and has ever since remained and now is a part of the records and files of that office. A duplicate of the map was kept by the proprietors at their place of business in the town, and was by them and their agents exhibited to all purchasers of lots and blocks, and all said lots and blocks were negotiated and sold to purchasers in accordance with the map or plat, and all deeds were made with reference to it.

The town was first incorporated and made a body politic and corporate by an act of the legislature, approved March 21, 1872, and during the months of June and July of that year the board of trustees caused a new survey and plat of the town to be made. This new plat or map, so far as the two-hundred-acre tract before spoken of is concerned, was an exact duplicate of the map filed in 1855, and was adopted and approved as the plat of the

town by a resolution and ordinance passed by the board of trustees on the 9th of December, 1872.

The foregoing facts are alleged in the complaint and not denied by the answer.

It further appears that not less than eight blocks and thirteen lots in other blocks were sold and conveyed by the proprietors between February, 1855, and March, 1857. One of the blocks so sold was on Davis Street, opposite to the block in question, and at the time of the sale it was represented to the purchaser that the said block in question was a public square.

For eight or nine years after the map was filed in 1855, "Court Square" remained open and uninclosed. In 1862, 1863, or 1864 it was inclosed by one of the defendants, in connection with an adjacent block on which he resided, and a small barn was placed upon it. Since that time the inclosure has been kept up, and a part of the ground has been annually cultivated by him.

Upon these facts the court below found as conclusions of law:—

"That the town proprietors in making the map and plat of the town, as stated, and in placing the same as a public record of the county in the office of the county recorder, it operated as a declaration on their part to dedicate the place named 'Court Square' to the purposes of an open, public town square for the use of the inhabitants of the town and the public.

"That in immediately following up the making and filing of the said map and plat by sales and conveyances by them of lots and blocks in the town to *bona fide* purchasers, in accordance with such map and plat, such dedication became absolute and irrevocable."

These conclusions are assailed by the appellants as not warranted by the facts, and whether they are or not is the principal question presented in the case.

It is settled law that where one owning land lays off a town or village thereon, and makes a map of the town

site showing it to be divided into streets, alleys, blocks, and lots, and then sells lots with reference to such map, he thereby makes an irrevocable dedication of the space represented on the map as streets to the use of the public. There are many cases to this effect, but only a few need be cited. (*Rowan's Ex'rs* v. *Town of Portland,* 8 B. Mon. 232; *Briell* v. *City of Natchez,* 48 Miss. 423; *Bartlett* v. *Bangor,* 67 Me. 464; *Wiggins* v. *McCleary,* 49 N. Y. 346; *Kittle* v. *Pfeiffer,* 22 Cal. 489; *Stone* v. *Brooks,* 35 Cal. 501.) And if there be public squares or plazas represented on the map, the same rule applies to them, and dedication thereof may be established in the same manner. (*Cincinnati* v. *White's Lessees,* 6 Pet. 431; *Trustees of Watertown* v. *Cowen,* 4 Paige, 510; *Huber* v. *Gazely,* 18 Ohio, 18; *Logansport* v. *Dunn,* 8 Ind. 378; *Carter* v. *City of Portland,* 4 Or. 339; *Raich* v. *Rock Island,* 5 Biss. 95; *Grogan* v. *Town of Hayward,* 6 Saw. 498.)

To make the dedication complete, no formal acceptance of it is necessary. In this case no such acceptance could have been had till the town was organized by the legislature in 1872; and until then the former owners held the title of the property dedicated in trust for the public. (*Grogan* v. *Town of Hayward, supra; Jersey City* v. *Morris Canal and Banking Co.,* 12 N. J. Eq. 547; *School District* v. *Heath,* 56 Cal. 478.)

But it is urged that the proprietors never intended to dedicate the premises in question as a public square, and so no dedication was in fact made; that at the time the map was made and filed San Leandro was striving to become the county seat of the county, and that the proprietors, hoping and expecting the adoption of the town as the county seat, and that they would derive a benefit and advantage therefrom, for the purpose of showing to purchasers of lots that the county buildings were to be located in the town, marked and designated " Court Square" for county purposes, intending it to be used

for the erection of a court-house, and such other buildings and offices as customarily accompany and are used with the court-house; that the name shows that the block was intended to be used for county buildings and county purposes, and not otherwise; and that it carries on its face notice of the use for which it was designed.

In support of this contention, it was shown that on the twenty-ninth day of December, 1854, the proprietors executed and delivered to the county of Alameda their deed for four acres of land, "to be located in such part of the town of San Leandro as any persons who shall be authorized to act and decide upon the matter may choose," and the land so chosen was to be "for the exclusive use of said county for the erection of a court-house, and such other buildings and inclosures as may be needed for the use of said county." It was further shown that on the twenty-fifth day of August, 1856, and after San Leandro had been made the county seat of the county, the proprietors executed another deed, and thereby conveyed to the county "block number nineteen (19) in the town of San Leandro, in said county of Alameda, according to the records, plat, or other official plan of said town, containing two (2) acres more or less; said block of land having been selected by the board of supervisors of said county as a site for the erection of a court-house and jail upon, as contemplated by the deed of the said party of the first part to the said party of the second part, above referred to."

No other evidence upon this subject was offered by defendants, and the court found:—

"That neither at the time of the making of said survey and plat by the proprietors, to wit, some time previous to the twenty-ninth day of December, 1854, or at the time said plat was filed as aforesaid, or at any time, did said proprietors intend that said place, named on the plat ' Court Square,' should be used for the erection of county buildings, or be used in any manner for county

purposes; but, on the contrary, it was the intention of said owners and proprietors, in laying out said town as aforesaid, that this place, so left by them open and vacant, and by them named 'Court Square,' should forever be and remain an open, public square for the use of the town and the inhabitants thereof and the public."

We are unable to see any such significance in the word "Court" as is claimed by the appellants, or that this finding should be set aside because not justified by the evidence.

It is further insisted that because after 1871 the town and county assessors included this square in their assessment lists, and it was included in the general tax levy, and the defendants' intestate paid the taxes, and, in obedience to the municipal ordinances, improved the streets bordering on the square, the plaintiff is now estopped from claiming it as against the defendants.

The answer is, that when the block was dedicated to the use of the public as a public square it became a part of the public grounds of the town, and could not be legally assessed or taxed for state, county, or municipal purposes; and the erroneous action of officials in the respects named could not impair the rights of the public, or confer rights upon the defendants. The doctrine of estoppel has therefore no application. As to the defense that the action is barred by the statute of limitations, it is sufficient to refer to the cases of *Hoadley* v. *City of San Francisco*, 50 Cal. 265, and *People* v. *Pope*, 53 Cal. 437, in which it was held by this court that no one can acquire by adverse occupation as against the public the right to a street or square dedicated to public uses.

It follows that the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.