#### OF THE

## TERRITORY OF ARIZONA

#### DURING THE YEAR 1895.

[Civil No. 433.  Filed March 9, 1895.]

[39 Pac. 812.]

JOHN M. EVANS, Plaintiff and Appellant, v. J. W. BLANKENSHIP, Defendant and Appellee.

1. DEDICATION—PARKS—EVIDENCE.—Land appearing upon a map of Neahr's Addition to the city of Phœnix as a park, with no other designation except the figures "570" on its sides and "300" on its ends, and among the references on the margin these words: "Public Grounds, 570-300," platted by a surveyor under the instructions of an agent of the owner, is sufficient dedication to the public, where the owner ratified such acts by making sales of lots in said addition, reference being had to this map for a more complete description of the property sold.

2. SAME—SAME—PURPOSE OF—EVIDENCE—SUBSEQUENT DECLARATIONS.— Evidence of letters written to the speaker of the territorial assembly by the owner subsequent to the dedication to the public to the effect that he offered it for a site for the territorial capitol cannot control, as at that time, the dedication being complete, he had no further control over it.

3. SAME—SAME—ACCEPTANCE—NECESSITY FOR.—The action of the city council, in 1888, ordering that the plaza in Neahr's Addition be cleaned up was a sufficient and timely acceptance by the city, if, in fact, any acceptance by it was necessary.

4. SAME—SAME—TAXATION—ESTOPPEL.—The assessment for municipal taxes of a park dedicated to the public does not estop the city from thereafter claiming it for park purposes.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. R. E. Sloan, Judge. Affirmed.

(307)

The facts are stated in the opinion.

W. H. Stilwell, for Appellant.

"Unless there appears an actual intent to dedicate on the part of the owner, the court cannot do otherwise than find that there was no dedication." *Hogue* v. *City of Albina*, 20 Or. 182, 25 Pac. 388.

Assent on part of owner must clearly appear. *Marcy* v. *Taylor*, 19 Ill. 634.

Must be unequivocal. *President* v. *Indianapolis*, 12 Ind. 620; *Harding* v. *Jasper*, 14 Cal. 642; *Holdane* v. *Cold Spring*, 21 N. Y. 477; *Quinn* v. *Anderson*, 70 Cal. 456, 11 Pac. 746; *Hogue* v. *City of Albina*, 20 Or. 182, 25 Pac. 386.

Others must have acted in reference to and upon the faith of the acts from which dedication is claimed. *Oswald* v. *Grenet*, 22 Tex. 94; *Heirs of David* v. *New Orleans*, 16 La. Ann. 404, 79 Am. Dec. 586; *Connelian* v. *Ford*, 9 Wis. 221.

"Parties are not to be done out of their property by doubtful implications, no matter how much the public may be inconvenienced." *Cerf* v. *Pflegving*, 94 Cal. 131, 29 Pac. 417.

Selling lots by unrecorded map gives no public right; only individuals can complain. *People* v. *Reed*, 81 Cal. 70, 15 Am. St. Rep. 22, 22 Pac. 474; *Village of Grandville* v. *Jenison*, 86 Mich. 567, 49 N. W. 544.

Selling lots according to a map showing *vacant lots*, not referring to it as a "common," vests no rights. *Oswald* v. *Grenet*, 15 Tex. 123; *Cerf* v. *Pflegling*, 94 Cal. 131, 29 Pac. 417.

Plaintiff in this case deraigns title through the probate court, not by deed from David Neahr, whose death in March, 1884, terminated all acts or intention on his part. See *Archer* v. *Salinas City*, 93 Cal. 16, 28 Pac. 839, for distinction made on above point.

The question of private rights does not enter into this case. Defendant does not attempt to show that David Neahr ever sold any lot in Neahr's Addition, described by deed or word as adjacent to any "park or square or common"; that any extra price was ever charged for such property; that any person ever purchased any lots by reason of any such representation. There is no showing that either Neahr, the city, or others ever attempted to use or improve such property as a park, square.

or common, or otherwise. *Village of Fulton* v. *Mehenfeld,* 8 Ohio St. 440; *Town of Van Wert* v. *Board of Education,* 18 Ohio St. 221.

The premises in question were not within the corporate limits of the city of Phœnix until March 11, 1885. (Act No. 61, Laws 1885, p. 101.) *Livermore* v. *City of Maquoketa,* 35 Iowa, 358; *Smith* v. *City of Osage,* 80 Iowa, 84, 45 N. W. 404, 8 L. R. A. 644.

If there was a dedication in 1880, the question arises, To whom was it made? Was it for church, school, territory, county, or to Phœnix, if it should ever be embraced in the city of Phœnix? These questions should appear from the evidence.

The burden of proving a dedication rests upon the party claiming it, and should clearly appear, particularly when the party claiming it is attempting to justify an unlawful act. Elliott on Roads and Streets, pp. 510, 511, 514, 515. Dedication: 2 Waterman on Trespass, pp. 17, 18, 20, 22, 23, 77, 81, 82; *People* v. *Reed,* 81 Cal. 70, 15 Am. St. Rep. 22, 22 Pac. 474; *Hayward* v. *Manzer,* 70 Cal. 479, 13 Pac. 141; *Miller* v. *Town of Aricoma,* 30 W. Va. 606, 5 S. E. 148; *Kemper* v. *Collins,* 97 Mo. 644, 11 S. W. 235.

No act on part of city signifying an acceptance of a dedication is shown in the case prior to the commencement of this suit. *Littler* v. *City of Lincoln,* 106 Ill. 354; *Fisher* v. *Beard,* 32 Iowa, 346; *Holdman* v. *Village of Cold Spring,* 21 N. Y. 474; *Scott* v. *Des Moines,* 64 Iowa, 444; *City* v. *Scholte,* 24 Iowa, 283, 95 Am. Dec. 729; *Hogue* v. *City of Albina,* 20 Or. 182, 25 Pac. 388, 32 Am. & Eng. Corp. Cases, 49.

The city had regularly assessed and collected municipal taxes from plaintiff since the premises in question were included in the corporate limits of the city of Phœnix until commencement of this suit. Estoppel by Taxation: *Adams Co.* v. *B. and M. R. R. Co.,* 39 Iowa, 507.

"A city is estopped to deny the ownership of real estate by a party whom it has permitted under a claim of right to occupy the same and pay taxes thereon levied by itself." *Simplot* v. *City of Dubuque,* 49 Iowa, 630; *Shellhouse* v. *State,* 110 Ind. 509, 11 N. E. 484; *Scott* v. *Des Moines,* 64 Iowa, 444, 20 N. W. 752; *Holdman* v. *Village of Cold Spring,* 21 N. Y. 474; *Lee* v. *Lake,* 14 Mich. 12, 90 Am. Dec. 220.

The city is estopped, first, by not asserting title and taking possession; second, by recognizing title in Neahr and Evans for six years and taxing them for four years. They stood by quietly and saw Evans fence the lots; then two years afterward tear the fence down and come into court and attempt to justify the act by a claim on the part of the public.

All the land herein was conveyed by Neahr to other parties within six months from the time Patrick claims to have made the plat. Had there been an intention to dedicate, such conveyance would have been a revocation thereof. *City of Chicago* v. *Drexel*, 141 Ill. 89, 37 Am. & Eng. Corp. Cases, 162, 30 N. E. 774.

The death of donor was a revocation of an offer of dedication, had there been one. *People* v. *Kellogg*, 22 N. Y. 490; *Hayward* v. *Manzer*, 70 Cal. 476, 13 Pac. 114.

Until 1885, blocks 16 and 17 were not within the corporate limits. Requiring stronger evidence of dedication: *Quinn* v. *Anderson*, 70 Cal. 457, 11 Pac. 746; *Onstott* v. *Murray*, 22 Iowa, 457; *Harding* v. *Jasper*, 14 Cal. 649. User must be for purpose intended. *Starr* v. *People*, 17 Colo. 458, 30 Pac. 64.

When the words of dedication are ambiguous, the contemporaneous acts and declarations of the donors and usage may be adverted to to explain them. *Tullis* v. *Young*, 6 Ohio, 294; *City of Cincinnati* v. *Hamilton County*, 7 Ohio, 88; *Dunn* v. *Cronise*, 9 Ohio, 82.

L. H. Chalmers, for Appellee.

"If the owner of a tract of land dedicate it to the public use as an open square of a city, for the convenience and accommodation of the inhabitants, the public acquire a vested right to its possession for that purpose, and the owner or his representatives cannot maintain an action of ejectment to recover possession of it. To constitute such a dedication, the legal title need not pass from its owner, nor is it necessary that any guarantee of the use should be in existence. All that is required is the assent of the owner of the land to its use, and the actual enjoyment of use for such a length of time that the public accommodation and private rights might be materially affected by the interruption of the enjoyment." *City of Cincinnati* v. *White's Lessee*, 6 Pet. 431. A careful

study of this case furnishes a liberal education on the subject
of dedications.     See, also, *New Orleans* v. *United States,* 10
Pet. 662.

The right of the public in such cases does not depend upon
a twenty years' possession.    Such a doctrine, applied to high-
ways and the streets of the numerous villages and cities that
are so rapidly springing up in every part of our country,
would be destructive of public convenience and private right.

There is no particular form or ceremony necessary in
the dedication of land to public use.    All that is required
is the assent of the owner of the land and the fact of
its being used for the public purposes intended by the appro-
priation.

The testimony of Alexander in the court below as to
Neahr's intention to give this particular property to the terri-
tory for capitol grounds can cut no figure after its actual
dedication by the ratification of the filing of the map in the
office of the county recorder of Maricopa County, and the
selling of the lands with reference to that map.

"A tract of land designated in the plat of a town, laid out
in 1796 as the 'public square,' was thereby dedicated to the
use of the town, and no subsequent disposition made of it by
the original proprietors can affect such use.    A person in the
possession of said land deriving title under the original pro-
prietor has no lien upon the land for the consideration, money,
or improvements."    *Hubert* v. *Gasley,* 18 Ohio, 18.

As said in this last case, "The use vested at the instant the
first lot designated upon that plat found a purchaser."

"When the owner of land lays off a town or village thereon
and makes a map of the town-site, showing it to be divided
into streets, alleys, blocks, and lots, and then sells lots with
reference to said map, he thereby makes an irrevocable dedi-
cation of the space represented on the map as streets to the
use of the public, and if there be a public square, plaza, or
plazas on the map, the same rule applies to them, and dedi-
cation thereof may be established in the same manner.    The
fact that the square after its dedication to the public was
assessed to a person in the adverse possession thereof and all
the taxes thereon were paid by him, does not impair the right
of the public or estop the town from claiming under the dedi-

cation as against him." *Town of San Leandro* v. *Le Breton,* 72 Cal. 170, 13 Pac. 405.

This case is very similar to the case at bar in this, that the town of San Leandro was not incorporated until long after the dedication. The case also goes to show how far the courts will go on the question of taxation.

"A dedication may be made to the public by grant or through written instrument, or it may be evidenced by acts and declarations without writing. It may be made by the survey and plat alone, without any dedication either orally or on the plat. Where it is evidenced from the face of the plat that it was the intention of the proprietor to set apart certain ground for the use of the public, no particular act is required to constitute a dedication—it is purely a question of intention." *Maywood Co.* v. *Village of Maywood,* 118 Ill. 61, 6 N. E. 866.

"Neither a subsequent deed by the proprietors nor their posterior declarations can affect the right." *Town of Lebanon* v. *Commissioners,* 9 Ohio, 80, 34 Am. Dec. 422.

"The immediate opening and use by the public of all the streets in ground laid out and platted into lots for their entire length, or an immediate formal acceptance by some competent public authority is not necessary to give effect to the dedication of land to the public use for streets by the making of a town plat and the sale of lots with reference to the plat. The public authorities must be allowed a reasonable time for opening and improving public streets as their resources and public necessity may allow and require. Where land has been dedicated to the public for streets by the acknowledgment and recording of the proper town plat under the statute, the dedication cannot be revoked by the owner, even before acceptance by the public. The proper authorities are not bound to accept such dedication at once." *Town of Lakeview* v. *John Bahn,* 120 Ill. 92, 9 N. E. 269.

"Declarations of an agent employed to lay out a town and make a plat, afterwards acted upon by his principal, made while engaged in the work, to the effect that a certain strip of ground was reserved for a street, are admissible to prove a dedication of the land to that use." *Barclay* v. *Howells,* 6 Pet. 202.

See on the general questions raised by this discussion:

*Schneider* v. *Jacob,* 86 Ky. 101, 5 S. W. 350; *Fulton* v. *Town of Dover,* (Del. Ch.), 6 Atl. 633; *Smith* v. *City of Portland,* 30 Fed. 734; *Donohoo* v. *Murray,* 62 Wis. 100, 22 N. W. 167; *Chapin* v. *Brown,* 15 R. I. 579, 10 Atl. 639.

BETHUNE, J.—This is an action of trespass instituted by plaintiff, the appellant here, on the thirteenth day of June, 1891, against defendant and appellee, who was the city marshal of the city of Phœnix, for tearing away a fence erected by plaintiff around a tract of land in what is known as "Neahr's Addition to the City of Phœnix," and claimed by plaintiff as his property in fee, under a deed from the executor of David Neahr, deceased, dated July 25, 1885. Defendant admitted tearing away the fence, and justified as such city marshal, acting under the duties of his office. It is stipulated in this case, among other things, that on the fifth day of October, 1875, one David Neahr became the owner in fee simple of the northeast quarter of section 7, township 1 north, range 3 east, Gila and Salt River Meridian, containing one hundred and sixty acres, and that the land in dispute in this action is a part of said quarter-section; "that about the year 1880 said David Neahr, then being the owner of said quarter-section of land, platted the same into lots, block, streets, and alleys"; and that said David Neahr made sales of divers lots of land in Neahr's Addition to the city of Phœnix during his lifetime, reference being had to the map of one Patrick, a surveyor, for a more complete description of the property sold; "that said David Neahr died prior to April 25, 1884."

The question in this case is whether or not the lot of the land in dispute was dedicated by Neahr in his lifetime as a public square. The land in dispute appears on a map (which is a part of the record in this case) as a park laid out in walks, with a circle in the center, and is in size double that of the surrounding blocks or squares, which are cut up into lots, and divided from each other and the land in dispute by streets and alleys. There is no other designation given to this tract in dispute than that mentioned, except the figures "570" on its sides and "300" on its ends, and among the references on the margin of the map these words: "Public Grounds, 570-300." This map, as the record shows, is a copy of a map of Neahr's Addition to the city of Phœnix made by H. L. Pat-

rick, a surveyor, on the sixth lay of March, 1880, and filed by him in the office of the county recorder of Maricopa County on that day. It was shown that the original map, after being in the recorder's office some time, had become much worn, and "about to fall to pieces," and about the year 1889 or 1890 was copied into a book in the recorder's office, at the instance of the city council of Phœnix, since which time the original became lost, and could not be found. It is contended by appellant that the evidence fails to show that the map relied on is a copy of a map made by David Neahr, or authorized to be made by him, of his addition to Phœnix; but we think the evidence on that point admits no other conclusion than that the map offered in evidence was a copy of the original, and the only map of Neahr' Addition made by Patrick. Patrick himself testifies that it was, and Osborn, the county recorder, testifies that it was a copy of the map which Patrick filed in the recorder's office, which he saw in 1883, and which remained there from that time until 1889. There is no evidence contradicting these two witnesses, or establishing any other hypothesis than the fact that this map was the only one made by Patrick of Neahr's Addition. The record discloses the fact that Patrick made the map at the instance of one De Forrest Porter, with whom David Neahr made a contract during his lifetime, to wit, May 3, 1879, placing in the hands of said Porter, for sale and disposal, the said northeast quarter-section of land comprising Neahr's Addition, and agreeing that said Porter should have full control of said property "in negotiating sales thereof, and in placing the same on the market"; and, using the language of the contract, "it is further agreed that the last described tract of land [said northeast quarter] is to be subdivided into lots, the size and numbers as shall be determined upon by the parties hereto hereafter, and shall be sold according to subdivisions so made." Appellant claims that none of the acts of Porter and Patrick amounted to a dedication by Neahr of the land in question; and, truly, they might not have, had no action been taken by Neahr to ratify and indorse the act of them both by his making sales of divers lots of land in Neahr's Addition, reference being had to this map made by Patrick, at the instance of Porter, for a more complete description of the property sold, which the stipulation shows he did. "His sanction, when

given, relates back to the original transaction, and gave equal effect to it as if he, the principal, had been present.'' *Barclay* v. *Howell,* 6 Pet. 498. These acts of Neahr show an irrevocable dedication of the land in question to the public, and the fact of recording or not recording the map makes no difference. "The mere act of surveying land into lots, streets, and squares by the owner will not amount to a dedication; yet the sale of land with reference to such plat, map, or plan, whether recorded or not, will amount to an immediate and irrevocable dedication of such streets, etc., so far as the owner is concerned." Dillon on Municipal Corporations, chap. 17, sec. 505; *United States* v. *City of Chicago,* 7 How. 185, 5 Am. & Eng. Ency. of Law, pp. 405-407, and many cases cited.

Purpose of the dedication: Appellant contends that, if there was any dedication of this land to the public, it was only for the purpose of a site for capitol grounds when this territory should become a state, and introduced evidence that several times, beginning in the year 1883, David Neahr offered the land for that purpose in letters to the speaker of the house of the territorial assembly. But at that time, the dedication to the public having been complete, Neahr had no further control over it. *Huber* v. *Gazley,* 18 Ohio, 18; *San Leandro* v. *Le Breton,* 72 Cal. 170, 13 Pac. 405; *Maywood Co.* v. *Village of Maywood,* 118 Ill. 61, 6 N. E. 866; *Town of Lebanon* v. *Commissioners,* 9 Ohio, 80, 34 Am. Dec. 422. While a party may sometimes testify as to his original intention in regard to the dedication to the public, the dedication is generally proved by evidence of the owner's acts, together with the surrounding circumstances. *Bidinger* v. *Bishop,* 76 Ind. 244; *McKee* v. *Perchment,* 69 Pa. St. 342, 24 Am. & Eng. Ency. of Law, p. 9, and cases cited. By reference to the map of Neahr's Addition in the record of this case, it will be observed that the street which would run through this land if extended is marked on the map as "Park Avenue," on both sides of the tract, which furnishes some evidence that the donor intended that the tract should be a park, whatever ideas he may afterwards entertained of its becoming a site for the capitol building.

As to the acceptance by the city of Phœnix: "In order to dedicate property for public use in cities and towns and other

places, it is not essential that the right to use the same shall be vested in a corporate body. It may exist in the public, and have no other limitation than the wants of the community at large." *New Orleans* v. *United States,* 10 Pet. 662. "And, where such lots and streets dedicated by plat are afterwards included in an old and adjoining town by extending the corporate limits thereof, no proceedings by the corporate authority for the condemnation of any such streets are necessary. They are already public streets by prior dedication." *Fulton* v. *Town of Dover,* 6 Del. Ch. 1, 6 Atl. 633. "The open square in a town may be dedicated to the public by its owner, and a formal acceptance by the town is not necessary to make the dedication complete. Acceptance may be presumed if the gift is beneficial, and user is evidence that it is beneficial. No particular length of time is necessary to make a dedication binding." *Abbott* v. *Cottage City,* 143 Mass. 521, 58 Am. Rep. 143, 10 N. E. 325. "The public authorities must be allowed a reasonable time for opening and improving public streets, as their resources and public necessity may allow and require." *Town of Lake View* v. *Le Bahn,* 120 Ill. 92, 9 N. E. 269; *Meier* v. *Railway Co.,* 16 Or. 500, 19 Pac. 610. This land did not become a part of the city of Phœnix until the year 1885, but certainly it had been accepted on the part of the public by those persons who had bought lots in the addition. *Archer* v. *Salinas City,* 93 Cal. 43, 28 Pac. 839. And on the 6th of February, 1888, the city council of Phœnix, upon the petition of several citizens that the plaza in Neahr's Addition be cleared, plowed, and ditched, instructed the street and alley committee to "clear up the plaza." This alone, we think, was a sufficient and timely acceptance by the city, if, in fact, any acceptance by it was necessary.

The only remaining point to be noticed is as to the estoppel of the city by reason of its having assessed this land for municipal taxes. On that point we are satisfied with the doctrine enunciated in the case of *San Leandro* v. *Le Breton,* 72 Cal. 170, 13 Pac. 405, wherein the court says: "When the block was dedicated to the use of the public as a public square, it became a part of the public grounds of the town, and could not be legally assessed or taxed for state, county, or municipal purposes; and the erroneous action of officials in the respects named could not impair the rights of the public or confer

rights upon the defendant.    The doctrine of estoppel has therefore no application.''

The judgment of the district court is affirmed.

Rouse, J., and Hawkins, J., concur.

Baker, C. J., having been of counsel for the appellee in the court below, took no part in the decision of said cause. ˳