544 P.2d 657

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department and County of Gila, Arizona, a body politic, Appellants,**

v.

**Wilford CARDON and Phyllis Cardon, husband and wife, Elijah Cardon and Marjorie Cardon, husband and wife, dba the Cardon Oil Company, Appellees.**

**No. 11985–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 5, 1976.

N. Warner Lee, Former Atty. Gen., Phoenix, Bruce E. Babbitt, Atty. Gen. by Donald O. Loeb, Asst. Atty. Gen., for appellants.

Standage & Allen by Gove L. Allen, Mesa, for appellees.

STRUCKMEYER, Vice Chief Justice.

The State of Arizona and the County of Gila brought this action against Wilford, Phyllis, Elijah, and Marjorie Cardon to obtain relief from an asserted wrongful damage to certain public streets in Payson, Arizona. The Superior Court of Gila County denied any relief. The Court of Appeals reversed, 23 Ariz.App. 82, 530 P. 2d 1115, and we accepted review. Opinion of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

In 1949, a tract of land in Payson, Arizona was subdivided into blocks, lots, and streets. Appellees acquired three adjoining lots in the subdivision, abutting the intersection of Aero Drive and State Highway 87. They operate a service station on these lots. Prior to the time the appellees acquired their lots, the State Highway Department constructed a concrete curb and gutter along Highway 87 and extended it around the corner and sixty feet along the northern border of Aero Drive. Appellees destroyed 29.5 feet of the concrete curb along Aero Drive so that motor vehicles might ingress and egress from their property.

The State, joined by Gila County, filed suit against appellees for damages, or in the alternative for a mandatory injunction to compel the replacement of the curb and gutter. The Superior Court found that the state and county lacked the authority to construct a curb and gutter along Aero Drive outside the boundary of Highway 87 and that such interfered with the access to the Cardon property and justified its summary removal. The appellants question the conclusion of the trial court.

While the word "highway" is a generic term for all kinds of public ways and the phrase "public highway" is a tautological expression since all highways are public, *Sexton v. State,* 239 Ala. 662, 196 So. 746 (1940), in Arizona "public highways" are limited to those established in the manner provided by law and to no others. *Territory v. Richardson,* 8 Ariz. 336, 339–40, 76 P. 456 (1904); *Tucson Consolidated Copper v. Reese,* 12 Ariz. 226, 100 P. 777 (1909); *Champie v. Castle Hot Springs Company,* 27 Ariz. 463, 233 P. 1107 (1925); *Mead v. Hummel,* 58 Ariz. 462, 121 P.2d 423 (1942); *Calhoun v. Moore,* 69 Ariz. 402, 214 P.2d 799 (1950); *Old Pueblo Transit Company v. Arizona Corporation Commission,* 84 Ariz. 389, 329 P.2d

1108 (1958); *State ex rel. Herman v. Electrical District No. 2*, 106 Ariz. 242, 474 P.2d 833 (1970).

▇ Public highways can be established by the state, A.R.S. § 28–1861 et seq., by counties, A.R.S. § 18–201 et seq., by incorporated cities, A.R.S. § 9–276, and incorporated towns, A.R.S. § 9–240 et seq. And while the title to streets dedicated to the public as part of a subdivision in an unincorporated area is in the county, A.R.S. §§ 9–254 and 9–1141, unless there has been an acceptance of the streets by the county supervisors pursuant to A.R.S. § 18–201 et seq., the streets are not public highways.

▇ By A.R.S. § 18–201, the board of supervisors of a county may establish, alter and abandon highways in the county on the presentation of a petition signed by ten or more resident taxpayers of the county. Since the establishment, alteration and abandonment of highways is a public duty cast upon the supervisors by law, public monies can be expended therefor.

By § 18–207, the supervisors of a county are further authorized to expend public funds for the maintenance of roads and streets other than legally designated county highways.

"A. The board of supervisors may expend public funds for maintenance of public roads and streets other than legally designated state and county highways located without the limits of an incorporated city or town. * * *

B. Maintenance on public roads and streets shall not be construed to include purchasing or laying rock products, cement or petroleum product materials, except that maintenance on public roads and streets which are paved with cement or petroleum product materials may include seal coating and patching." A.R.S. § 18–207.

But by subsec. B, their authority does not include the "purchasing or laying rock products, cement or petroleum product materials."

From the foregoing it is apparent that there are two categories of highways upon which the county may expend public monies—those that are public highways established pursuant to law and on other roads and streets pursuant to § 18–207.

While Highway 87 is a state highway upon which public funds can be expended, no assertion is made that Aero Drive is a county highway within the meaning of § 18–201, permitting the expenditure of funds for the cement curb and gutter. Rather, appellants rely on A.R.S. § 18–209 to establish that Aero Drive is a public highway. That statute now reads:

"The streets of an unincorporated town shall be considered public highways and under control of the board of supervisors of the county in which the town is located. The board may designate what streets in such towns shall be considered public highways and give appropriate names to them."

A.R.S. § 18–209 was initially adopted by the Territorial Legislature in 1868. It read:

"Section 1. In all the towns in this Territory not incorporated, and containing a population of more than five hundred souls, the streets shall be considered as public highways, and under the control of the Board of Supervisors of the county in which such towns may be situated.

Sec. 2. The Board of Supervisors of the several counties are hereby authorized and empowered to designate in all such towns in their respective counties, what streets shall be considered public highways under the provisions of this act, and to give appropriate names to all such streets * * *." Acts, Resolutions and Memorials adopted by the Fifth Legislative Assembly of the Territory of Arizona, 1868, page 24.

We think that the words "public highways" in A.R.S. § 18–209 must be read in the light of what a public highway was at the common law.

"The common-law rule was that a public highway was a 'way common and free to all the king's subjects to pass and repass at liberty,' and this court has recognized that the 'right to travel the highway * * * belongs to everybody in the State, * * * that the way belongs to the public, and is free and common as a way to every citizen of the land.'" *House-Wives League, Inc. v. City of Indianapolis,* 204 Ind. 685, 185 N.E. 511 (1933).

The words "public highways" used by the Fifth Legislative Assembly of the Territory of Arizona in 1868 undoubtedly were used in their general sense as ways common and free to all persons and were not used in the restricted sense that they were streets, roads or ways accepted by the governing authority upon which public monies could be expended without limitation.

From what has been said, it is apparent that the trial court did not err in its conclusion of law that the construction of the 60-foot curb along the northern boundary of Aero Drive outside the boundary of State Highway 87 was without authority of law; nor that the curb obstructed and interfered with the Cardons' right of access to their property.

"Access may be defined as the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the road or highway without obstruction. *Stoner Manufacturing Corp. v. Young Men's Christian Assoc'n, of Aurora,* 13 Ill.2d 162, 148 N.E.2d 441. Such a right, to be of any substantial utility, must necessarily include the owner's invitees and licensees." *State ex rel. Herman v. Wilson,* 103 Ariz. 194, 196, 438 P.2d 760, 762 (1968).

The trial court also found that appellees "were justified in summarily removing that portion of the curb outside the State Highway 87 boundary." As to this, a person who suffers injury through a nuisance, here interference with the right of access, may abate it without resort to legal proceedings provided he can do so without bringing about a breach of the peace.

"The privilege of abatement of a nuisance by self-help is of ancient origin, and existed at a time when early common law actions afforded a legal means of compelling the nuisance to be discontinued. It is closely related to the privilege of using reasonable force to protect the exclusive possession of land against trespass, and may be justified on the same basis, that injuries, 'which obstruct or annoy such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow process of the ordinary forms of justice.' * * *

Summary abatement of a private nuisance by self-help is open only to those whose interests in the enjoyment of land are interfered with, or in other words, to those to whom it is a nuisance." William L. Prosser, Law of Torts, § 90 at 605 (4th Ed. 1971).

We can conceive of no legal reason why the sovereignty is immune from this legal principle.

Judgment of the Superior Court affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.