876 P.2d 1199

The **STATE** of Arizona, Plaintiff/Appellant/Cross–Appellee,

v.

**C & H NATIONWIDE, INC.,** a Texas corporation, Defendant/Appellee/Cross–Appellant.

No. 2 CA–CV 93–0273.

Court of Appeals of Arizona, Division 2, Department B.

June 28, 1994.

Gallagher & Kennedy by Kevin E. O'Malley and Begam, Lewis, Marks, Wolfe & Dasse by Elliot G. Wolfe and Cora Perez, Phoenix, for plaintiff/appellant/cross-appellee.

Jennings, Strouss & Salmon by William T. Birmingham, M. Byron Lewis and Michael J. O'Connor, Phoenix, for defendant/appellee/cross-appellant.

## OPINION

ESPINOSA, Presiding Judge.

Appellant, the State of Arizona, filed an indemnification action against appellee C & H Nationwide, Inc. (C & H), for settlement money paid as a result of a fatal traffic accident involving an oversize load transported by C & H. The state appeals from the trial court's denial of its motion for summary judgment and the granting of C & H's cross-motion for summary judgment after finding that the state's indemnity action was beyond the scope of its statutory authority. On cross-appeal, C & H challenges the trial court's denial of its motion for attorneys' fees. For the reasons stated below, we affirm both rulings.

## Factual and Procedural Background

On appeal from a summary judgment, we view the evidence and all reasonable inferences therefrom in the light most favorable

to the appellant. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 799 P.2d 810 (1990). On March 7, 1988, C & H was moving a 15½ foot wide "ball mill section" on State Route 93, an undivided, two-lane highway, pursuant to a permit issued by the Arizona Department of Transportation (ADOT). C & H's vehicle was involved in a collision with a motorhome resulting in the deaths of seven people. Their survivors brought a negligence action against C & H and the state. The state settled the case for $2.1 million and then filed a complaint against C & H seeking indemnification pursuant to ADOT Regulation R17–4–413(C), which provides:

> Saving the state harmless. An applicant for a permit under these rules shall agree to hold the Director, the state of Arizona and any of its departments, divisions, agencies, officers and employees harmless from all sums which the Director, the state of Arizona, and any of its departments, divisions, agencies, officers or employees may be obligated to pay by reason of any liability imposed upon any of the above damages [sic] arising out of the issuance of a permit under these rules or arising out of any movement made pursuant to the permit or caused by any negligent act or failure to act committed by the permittee or any person employed by the permittee or any others for whose action the permittee is legally liable. The above sums shall also include in the event of litigation, court costs, expenses of litigation and a reasonable attorney's fee.

The state moved for summary judgment, arguing that regulation R17–4–413(C) expressly requires C & H to indemnify the state for money it paid to settle the underlying litigation as well as the other costs and expenses incurred in defending that action. In its cross-motion, C & H argued that ADOT exceeded its authority in enacting R17–4–413(C); that the regulation is invalid because ADOT failed to comply with the Administrative Procedure Act;[1] and that even if R17–4–413(C) were validly promulgated, it is unfair, contrary to public policy, and does not provide indemnity for the

1. A.R.S. §§ 41–1000 through 41–1071.

state's own negligence. After a hearing, the trial court granted C & H's cross-motion, finding that ADOT lacked authority under Title 28, Arizona Revised Statutes, to create an indemnity action. The court denied C & H's request for attorneys' fees based on A.R.S. §§ 12–341.01 and 12–348.

## Discussion

### 1. Standard of Review

 Statutory interpretation involves the resolution of legal rather than factual issues and is therefore subject to de novo review. *Chaffin v. Comm'r of Arizona Dep't of Real Estate*, 164 Ariz. 474, 793 P.2d 1141 (App. 1990). "[A] rule adopted by an administrative agency must be in accordance with the statutory authority vested in it, must be reasonable, and must be adequately related to the purpose of the act and neither arbitrary nor in contravention of any expressed statutory provision." *Grove v. Arizona Criminal Intelligence System Agency (ACISA)*, 143 Ariz. 166, 169, 692 P.2d 1015, 1018 (App. 1984).

### 2. Enforceability of Indemnity Clause

 On appeal, the state argues that R17–4–413(C) was adopted as "a proper exercise of administrative authority," given the broad rule-making powers granted to ADOT in the enabling statutes regarding public safety and the issuance of oversize load permits. Under A.R.S. § 28–108(A), the director of ADOT has the power to

5. Prescribe such rules as he deems necessary for public safety and convenience.

\* \* \* \* \* \*

19. Exercise complete and exclusive operational control and jurisdiction over the use of state highways and routes and prescribe such rules regarding such use as he deems necessary to prevent the abuse and unauthorized use of such highways and routes.

In regard to oversize load permits, A.R.S. § 28–1011 provides:

A. [T]he director with respect to highways under the jurisdiction of the department ... may upon application in writing and good cause being shown therefor issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this article or otherwise not in conformity with the provisions of this chapter upon any highway under the jurisdiction of the party granting the permit and for the maintenance of which the party is responsible.

\* \* \* \* \* \*

C. [T]he director ... may issue or withhold the permit at his discretion. If the permit is issued, the director ... may establish seasonal or other time limitations within which the vehicles described may be operated on the highways indicated or otherwise limit or prescribe conditions of operation of the vehicle or vehicles, when necessary to assure against undue damage to the road foundations, surfaces or structures, and may require such undertaking or other security as may be deemed necessary to compensate for *any injury to any roadway or road structure*.

(Emphasis added.) Finally, A.R.S. § 28–1013 imposes liability on the drivers and owners of oversize vehicles for damage to highways or highway structures caused by the movement of these vehicles.

Nowhere in the legislation do we find any authority, expressed or implied, conferred upon ADOT to require general indemnification by permittees. Even broadly construing the above statutory provisions, we can discern no legislative intent to authorize ADOT to require oversize load permittees to compensate the state for any damages other than damages to highways and related structures.

The state contends, however, that the authority to adopt R17–4–413(C) can be inferred from the statutory scheme as a whole and the broad discretion vested in ADOT to grant or deny oversize load permits because the indemnity provision furthers the legislative goal of promoting highway safety by providing additional incentive for oversize

load permittees to operate safely.[2] The state argues that ADOT's statutory directives and the public interest are served because the permittee, as the party who chooses the route of travel through the state and has actual control of the oversize load during its movement, is in the best position to adequately safeguard against injury to third persons. Absent the regulation, the state contends, it would be required to "maintain constant surveillance over the thousands of miles of roadway it maintains."

We find this argument unpersuasive for several reasons. The theory that a general indemnity obligation fosters safer highway operation by wide load carriers, although appealing on its face, is unsupported by any evidence in the record, and it avoids addressing potential issues concerning the state's own negligence. While imposing liability on a permittee for the state's negligence may benefit the state's coffers, we cannot see how it increases public safety, and, as C & H urges, it may actually diminish highway safety by reducing the state's incentive to avoid negligence. *See State v. Korean Air Lines Co.,* 776 P.2d 315, 318 (Alaska 1989) (regulatory indemnity provision in state airport lease "reduces the state's incentive to avoid negligence, not only with respect to KAL and other major carriers with similar lease provisions, but also with respect to the travelling public"); *cf. Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.,* 143 Ariz. 368, 382, 694 P.2d 198, 212 (1984) (attempts to avoid or limit tort liability disfavored as "tend[ing] to encourage carelessness"). Given its overall responsibility for regulating and maintaining the state's highways, it is ADOT that has superior knowledge of the general nature and conditions of the "thousands of miles of roadway it maintains," rather than carriers of oversize loads, particularly those from without the state as in this case. Moreover, ADOT has the authority to restrict the movement of dangerous oversize loads to certain routes and times that may be safer or better suited for such purposes or to impose other safeguards such as requiring escort vehicles and

warning devices. A.R.S. § 28–1011(A) and (C); R17-4-411.

Furthermore, absent a clear statutory directive, we do not believe that the determination whether to require indemnification is a matter for the agency to decide. Just as the decision to immunize the state from liability is properly a matter for the legislature, A.R.S. §§ 12–820 through 12–826, *see Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990), so also we believe is the decision to shift the state's liability to a third party. *Cf. Arizona Pub. Serv. Co. v. Shea,* 154 Ariz. 350, 742 P.2d 851 (App.1987) (statutory indemnity provision based on legislative determination that public safety and welfare are promoted by imposing liability on persons who engage in activities near power lines rather than on utility company).

We have found no Arizona precedent dealing with the validity of a regulatory indemnity provision, but the Alaska Supreme Court considered one in *State v. Alyeska Pipeline Serv. Co.,* 723 P.2d 76 (Alaska 1986). In that case, all travel on a particular state highway was by permit only. An employee of the defendant was injured on the highway and sued the state, which subsequently filed a third-party indemnity action under a hold harmless clause similar to the one at issue here. After noting that administrative regulations must be both authorized by statute and reasonably necessary to carry out the statutory purpose, the court concluded that the indemnity provision was inconsistent with and outside the scope of the statute because it bore no reasonable relation to the state's statutory duty to maintain the highway. Although the state distinguishes *Alyeska* on several fronts, its principle remains intact and instructive.

The Alaska Supreme Court again considered a regulatory indemnity action in *Korean Air Lines Co.* There, Southcentral Air sued Korean Air Lines (KAL) for damages incurred in a collision with a KAL jet, and KAL brought a third-party negligence claim against the state. The state argued that a

regulatory indemnity provision in its lease required KAL to indemnify the state for all claims arising out of the accident, including the state's own negligence. The court concluded that the regulation was invalid to the extent it required airport lessees to indemnify the state for its own negligence, because it exceeded the authorizing statute's stated purpose of "providing for the protection of persons and promotion of safety in aeronautics through appropriate measures." 776 P.2d at 319. *See also Air Transport Assocs. v. United States,* 221 F.2d 467 (9th Cir.1955) (federal government barred from enforcing liability release provisions for its own negligent operation of airport).

We reach a similar conclusion here. We find on the record before us no basis for concluding that the statutory goal of promoting highway safety is furthered by the regulation in question. *Cf. Grove* (purposes of enabling statutes not furthered by regulation placing certain permanent state employees on probationary status following transfer). We agree with the trial court that had the legislature wanted to give ADOT the power to require indemnification for anything other than damage to roadways and structures, it could have done so expressly as it did in §§ 28–1011(C) and 28–1013. In the absence of that authority, the indemnity clause is unenforceable. *See Corella v. Superior Court,* 144 Ariz. 418, 698 P.2d 213 (App.1985) (regulation purporting to give state health plan a lien on liability coverage of no effect where statute did not authorize creation of lien).

### 3. Denial of Attorneys' Fees

■ In its cross-appeal, C & H argues that the trial court erred in denying its request for attorneys' fees pursuant to A.R.S. § 12–348, citing the statute's mandatory language. As the state points out, however, § 12–348(H)(2) specifically provides that it does not apply to actions brought pursuant to Title 28. Although we are affirming the trial court's finding that the regulation upon which the state based its claim was invalid, the action was still brought pursuant to Title 28 and, therefore, § 12–348 is inapplicable. The trial court correctly denied the applica-

tion for fees. C & H's request for fees on appeal is similarly without basis.

### Disposition

We affirm the trial court's granting of summary judgment in favor of C & H and its denial of attorneys' fees to C & H. We deny C & H's request for attorneys' fees on appeal.

DRUKE, C.J., and HATHAWAY, J., concur.