12 P.3d 1208

The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a foreign corporation, Plaintiff–Appellant,

v.

ARIZONA CORPORATION COMMISSION, Defendant–Appellee.

No. 1 CA–CV 00–0079.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 16, 2000.

Fennemore Craig, P.C. by Jay Shapiro, Joseph Sciarrotta, Jr., Phoenix, Attorneys for Plaintiff–Appellant.

Arizona Corporation Commission by Robert J. Metli, Legal Division, Janet Wagner, Legal Division, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

TOCI, Presiding Judge.

¶ 1 Burlington Northern and Santa Fe Railway Company ("Burlington") appeals from the trial court's grant of summary judgment to the Arizona Corporation Commission (the "Commission"). Burlington's lawsuit challenged the Commission's authority to order the establishment of a public railroad crossing where a private road used by the public intersects Burlington's railroad tracks. We conclude that neither the Arizona Constitution nor the legislature has conferred authority on the Commission to require such a crossing and, therefore, we reverse and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 Prairie Road Crossing is located in a rural area of the state between the towns of Ash Fork and Prescott. Prairie Road on either side of the railroad tracks is a primitive dirt road. The portion on the east side of the tracks is owned by the United States Forest Service. On the west side, Prairie Road is owned and maintained by the residents of Juniper Wood Ranch ("Ranch"), an unapproved subdivision lying to the west of the Burlington tracks and near Prairie Road Crossing. Although Burlington considers Prairie Road Crossing a private crossing to be used for railroad maintenance purposes only, it has made no attempt in the past to prevent public use other than by posting signs that it is private. The crossing has in fact been used by members of the public since the 1920's and Ranch residents have used it since at least the 1980's.

¶ 3 Prairie Road, with its crossing over the railroad tracks, provides the residents of the southeastern portion of the Ranch with relatively easy access to State Route 89, which residents must use to reach the neighboring communities of Ash Fork and Prescott where they have access to work, schools, supplies, mail, and emergency services. Without Prairie Road Crossing, residents must travel considerably farther on other primitive dirt roads in order to reach alternative crossings in the area. Because a wash runs through a portion of the Ranch, some of the Ranch residents would be landlocked during a portion of the year if they did not have egress at Prairie Road Crossing.

¶ 4 On July 14, 1998, a complaint was filed with the Commission in response to a posted notice that Burlington intended to close Prairie Road Crossing to public use. The complaint requested the Commission to order Burlington to keep the crossing open to the public.

¶ 5 Burlington opposed the complainants' request, arguing that the Commission had no jurisdiction over this kind of crossing because it is located on a road that has not been established by any government entity as a public road. Burlington also attempted to show that the crossing under its present configuration posed an unreasonable safety risk to the public.

¶ 6 The Commission determined that it had jurisdiction to proceed in this case, and after a two-day hearing, found that Prairie Road Crossing "does not pose a relatively high degree of potential danger to the public" and that it was "the most reasonable means of access available to the residents of the southeastern portion of the Ranch, and in bad weather is the only practical and safe route." The Commission therefore concluded that public convenience and necessity demanded establishment of a public crossing. In issuing its Decision No. 61558, the Commission ordered that Burlington "establish, maintain and keep open to the public a crossing for Prairie Road upon its tracks at the location of the Prairie Road Crossing."

¶ 7 Following a denial of Burlington's application for rehearing, Burlington filed a civil complaint in superior court pursuant to

Arizona Revised Statutes Annotated ("A.R.S.") section 40–254 (1996), seeking to vacate the Commission's decision. In response, the Commission moved for summary judgment, arguing that the Commission's order was lawful, reasonable, and supported by substantial evidence. Burlington subsequently filed a response and cross-motion for summary judgment, seeking summary judgment as to the issue of the Commission's lack of jurisdiction but otherwise arguing that a trial de novo was necessary to show the unreasonableness of the Commission's decision. The superior court granted summary judgment to the Commission, concluding that the Commission had jurisdiction to render its decision and that Burlington failed to establish a genuine issue in its memorandum and statement of facts that the Commission's decision was unreasonable.

## II. DISCUSSION

### A. Standard of Review

■ ¶ 8 Under A.R.S. section 40–254(E), Burlington had the burden to show clearly and satisfactorily that the Commission's decision was unlawful or unreasonable. *Tonto Creek Estates Homeowners Ass'n v. Ariz. Corp. Comm'n,* 177 Ariz. 49, 55, 864 P.2d 1081, 1087 (App.1993). " 'Clear and satisfactory' evidence is the same as 'clear and convincing' evidence." *Id.*

■ ¶ 9 We review the decision of the superior court rather than the decision of the Commission. *Babe Invs. v. Ariz. Corp. Comm'n,* 189 Ariz. 147, 150, 939 P.2d 425, 428 (App.1997). Because the superior court granted summary judgment to the Commission, we view the facts and reasonable inferences in a light most favorable to Burlington, the party against whom judgment was granted. *Woerth v. City of Flagstaff,* 167 Ariz. 412, 416, 808 P.2d 297, 301 (App.1990). Both the superior court and this court, though, may depart from the Commission's legal conclusions or interpretation of a statute and determine independently whether the Commission erred in its interpretation of the law. *Babe Invs.,* 189 Ariz. at 150, 939 P.2d at 428.

### B. The Commission's Jurisdiction

■ ¶ 10 The Arizona Constitution gives certain authority over public service corporations, including railways, directly to the Commission. For example, Article 15, Section 3, authorizes the Commission to prescribe "just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State ..." and to "make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business." [1] The Arizona Constitution does not, however, contain language granting the Commission authority to require Burlington to establish and maintain a crossing. Any powers over public service corporations not specifically granted by the Constitution to the Commission reside with the legislature. It may enlarge the Commission's power and extend its duties. Ariz. Const. art. 15, § 6; *see also Corporation Comm'n v. Pacific Greyhound Lines,* 54 Ariz. 159, 176–77, 94 P.2d 443, 450 (1939).

■ ¶ 11 If the legislature does enlarge or extend the Commission's powers and duties, it is only upon such terms and limitations as the legislature deems proper. *Pacific Greyhound,* 54 Ariz. at 176–77, 94 P.2d at 450. Despite the Commission's argument to the contrary, the Commission has no implied powers, and its powers do not exceed those derived from a strict construction of the Constitution and the implementing statutes. *Commercial Life Ins. Co. v. Wright,* 64 Ariz. 129, 139, 166 P.2d 943, 949 (1946); *Tonto Creek,* 177 Ariz. at 55, 864 P.2d at 1087. Because the Commission's authority over railroad crossings does not come from the Constitution, but rather from the legislature, we now turn to the relevant statute to determine what authority it has granted to the Commission to establish public railroad crossings. We will not imply any power beyond that expressly bestowed by the statute. *See Tonto Creek,* 177 Ariz. at 56, 864 P.2d at 1088.

¶ 12 The relevant statute, A.R.S. section 40–337 (1996), provides as follows:

1. Pursuant to Article 15, Section 10, of the Arizona Constitution, "railways" are declared to be "common carriers." Pursuant to Article 15, Section 2, "common carriers" are deemed to be "public service corporations."

A. No public highway or street shall be constructed across the track of any railroad at grade ... without the permission of the commission, but this provision shall not apply to the replacement of lawfully existing tracks. The commission may refuse permission or grant it upon such terms and conditions as it prescribes.

B. The commission shall have the exclusive power:

1. To determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each of the crossings.

2. To alter or abolish crossings.

3. To prescribe the terms upon which and the proportions in which the expense of the alteration or abolition of the crossing shall be divided between the parties affected or in interest.

C. When the commission finds that public convenience and necessity demands establishment, creation or construction of a crossing of a street or highway over, under or upon the tracks or lines of any public service corporation, the commission may by order require the establishment, construction or creation of the crossing, and the crossing shall thereupon become a public crossing. The commission shall have the exclusive power to prescribe the character of crossings to be constructed and maintained by railroads where their lines cross public roads or streets of a town or city.

¶ 13 The dispositive question we must address is whether the statute allows the Commission to establish public crossings where railroad tracks intersect with roads or streets that are not "public" roadways. The first sentence in subsection C, contains no language indicating that a "public" roadway must be involved. The sentence refers merely to establishment of a "crossing of a street or highway over, under or upon the tracks or lines of any public service corporation." It appears to allow the Commission to establish a public crossing where any private street or highway intersects with railroad tracks if required by public convenience and necessity.

¶ 14 Furthermore, subsection C's reference to the Commission's exclusive power to prescribe the character of crossings over public roads or streets of a town or city is less than clear. The last sentence of subsection C provides "[t]he commission shall have the exclusive power to prescribe the character of crossings to be constructed and maintained by railroads where their lines cross public roads or streets of a town or city." Although neither party makes this argument, the last sentence of subsection C can be read as a limitation on the concurrent power of cities and towns to control railroad crossings rather than as an indication of legislative intent to restrict the authority of the Commission to establish railroad crossings involving public streets and roads.

¶ 15 Reading the statute as a whole, however, as we must, we are not persuaded that the legislature intended to grant the Commission jurisdiction over private crossings. When interpreting a statute, we give effect to the legislature's intent. *Faz v. Ford Motor Credit Co.*, 191 Ariz. 191, 194, 953 P.2d 935, 938 (App.1997). We consider individual provisions in the context of the entire statute. *Arizona Health Care Cost Containment System v. Cochise County*, 186 Ariz. 210, 213, 920 P.2d 776, 779 (App. 1996). Section 40–337 as a whole is concerned with crossings where public roadways intersect with railroad tracks. We conclude, therefore, that the Commission may order the establishment of public crossings only where railroad tracks cross public roadways. In fact, the Commission has conceded that its jurisdiction is so limited.

¶ 16 The Commission does argue, however, that the term "public road" is not limited to those roads that have been established by a government entity as public roads but includes all roads that are freely traveled by members of the public. It argues that the history of the public use of Prairie Road renders it a public road for purposes of section 40–337 and allows the Commission to order the establishment of a public crossing at its intersection with the railway tracks.

¶ 17 The Commission cites cases from several other jurisdictions in which courts have held that roads need not be dedicated in order to be public, and that it is the right to travel upon a road by all the world that distinguishes a public road from a private

one. *See, e.g., Dep't of Pub. Works and Bldgs. v. Farina,* 29 Ill.2d 474, 194 N.E.2d 209, 212 (1963); *St. Louis & S.F.Ry. Co. v. Smith,* 41 Okla. 163, 137 P. 714, 715 (1913).

¶ 18   As Burlington points out, however, Arizona courts have repeatedly interpreted Arizona law as providing that public roads and highways can only be established as provided by statute and not by other means such as prescriptive use. *See, e.g., State ex rel. Herman v. Cardon,* 112 Ariz. 548, 549, 544 P.2d 657, 658 (1976); *State ex rel. Herman v. Electrical Dist. No. 2 of Pinal County,* 106 Ariz. 242, 243, 474 P.2d 833, 834 (1970); *Mead v. Hummel,* 58 Ariz. 462, 467, 121 P.2d 423, 425 (1942); *Champie v. Castle Hot Springs Co.,* 27 Ariz. 463, 467, 233 P. 1107, 1108 (1925); *Territory v. Richardson,* 8 Ariz. 336, 339–40, 76 P. 456, 457 (1904).[2]

¶ 19   The Commission cites a passage from the *Cardon* case wherein the court recognized that Arizona previously had a common-law rule that a public highway was any roadway that was common and free to all persons to travel upon. 112 Ariz. at 551, 544 P.2d at 660. In interpreting the term "public highways" in the particular statute at issue, the court determined that the statute dealt not only with dedicated public roads but also with those that fell within the common law definition. *Id.* The Commission urges us to similarly hold that the legislature intended to include roadways falling within the common-law definition of "public roads" when it used that term in A.R.S. section 40–337.

¶ 20   In *Cardon,* the particular statute had been adopted by the Territorial Legislature in 1868 at a time when the words "public highways" would have included the common-law definition. 112 Ariz. at 549, 544 P.2d at 658. The *Cardon* court also acknowledged that even before Arizona became a state, the legislature had changed the law so that, thereafter, "in Arizona 'public highways' are limited to those established in the manner provided by law and to no others." *Id.* at 549, 544 P.2d at 658. This change in the law

took place in the 1901 code. *See Champie,* 27 Ariz. at 467, 233 P. at 1108; *Richardson,* 8 Ariz. at 339–40, 76 P. at 457.

¶ 21   Unlike the statute in *Cardon,* earlier versions of A.R.S. section 40–337 date back only to 1912. By that time, the common-law definition of "public roads" or "public highways" was no longer valid in Arizona. When the legislature enacted the original version of the statute giving the Commission authority to establish public crossings, therefore, it would have understood "public roads" to mean those established as provided by statute. Prairie Road is not such a "public road," and thus the Commission was without jurisdiction to order that a public crossing be established at its intersection with the railroad tracks. Because of our resolution of this issue, we do not discuss whether summary judgment against Burlington on the "reasonableness" issue was appropriate.

## C.  Attorneys' Fees

¶ 22   Burlington, as the prevailing party on appeal, requests that it be awarded its attorneys' fees both on appeal and for the proceedings in the superior court pursuant to A.R.S. section 12–348(A)(2). The Commission has not disputed Burlington's entitlement to attorney's fees, and we find that an award is mandated by the statute, subject to Burlington's compliance with the requirements of Arizona Rule of Civil Appellate Procedure 21(c). The amount of Burlington's award of attorneys' fees for the superior court proceedings shall be determined by the superior court upon proper request by Burlington following remand to that court.

## III.  CONCLUSION

¶ 23   We reverse the superior court's finding that the Commission had subject matter jurisdiction to order that a public railroad crossing be established at Prairie Road

---

2.  We have found one case suggesting that public roads may be established by "common-law dedication and acceptance." *Rodgers v. Ray,* 10 Ariz. App. 119, 121, 457 P.2d 281, 283 (1969). *Rodgers,* however, relies on *Allied American Invest-* *ment Co. v. Pettit,* 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947), in which the issue was whether a subdivision plot was properly dedicated as a public park. We find *Rodgers* entirely unpersuasive on this point.

Crossing. We remand with directions that the court vacate the Commission's decision on the grounds that the Commission exceeded the authority expressly outlined in A.R.S. section 40–337.

CONCURRING: SHELDON H. WEISBERG, Judge, and JAMES B. SULT, Judge.