IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ROBIN R. PLEAK and AUDREY PLEAK, husband and wife; and MICHAEL T. SHURTLIFF and ANN SHURTLIFF, husband and wife, | ) ) ) ) ) | 2 CA-CV 2001-0100 DEPARTMENT B

O P I N I O N |
| Plaintiffs/Appellants, | ) ) | |
| v. | ) ) | |
| ENTRADA PROPERTY OWNERS' ASSOCIATION, an Arizona non-profit corporation; PALO SECO CORPORATION, an Arizona corporation; BETTY C. BRITTON, an unmarried woman; JUAN A. SOMOZA, an unmarried man; TRES PIEDRAS, L.L.C., an Arizona limited liability corporation; STEVE V. THILL, an unmarried man; CINDY D. BEGNER, an unmarried woman; EDNA C. STACK, an unmarried woman; CAROLINE DODGE, a married woman; MARY R. DERRICK, an unmarried woman; FLEET MORTGAGE CORP., a South Carolina corporation; DETLEF D. LANGE and SALLY F. LANGE, husband and wife; BGR, L.L.C., an Arizona limited liability company; and MORTON R. ROSEN, a widower, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20001553

Honorable Jane L. Eikleberry, Judge

REVERSED AND REMANDED

Gust Rosenfeld P.L.C.
  By Charles W. Wirken                                                                                                      Phoenix
                                                                                Attorneys for Plaintiffs/Appellants


Law Office of Mark Rubin, P.L.C.
  By Mark Rubin                                                                                                             Tucson
                                                                                Attorneys for Defendants/Appellees


Mariscal, Weeks, McIntyre, & Friedlander, P.A.
  By P. Bruce Converse and Gary L. Birnbaum                                                                                 Phoenix
                                                                                Attorneys for Amicus Curiae Land
                                                                                     Title Association of Arizona

E S P I N O S A, Chief Judge.

¶1         Plaintiffs Robin and Audrey Pleak and Michael and Ann Shurtliff (collectively, the Pleaks) filed this action seeking a roadway easement over real property the defendants (collectively, Entrada) own or hold liens against. The Pleaks appeal from the trial court's order denying their motion for summary judgment and granting partial summary judgment in favor of Entrada, arguing Entrada's predecessor in interest, First American Title Insurance Company of Arizona, dedicated the easement to the public. The Pleaks further claim the trial court erred in awarding Entrada attorney's fees pursuant to A.R.S. § 12-341.01. We agree First American dedicated the roadway easement to the public and reverse the judgment.

Facts and Procedural History

¶2         In reviewing a grant of summary judgment, we view the facts and all reasonable inferences in the light most favorable to the party opposing the motion. Link v. Pima County, 193 Ariz. 336, 972 P.2d 669 (App. 1998). On June 3, 1988, First American recorded a "Record of Survey" on three adjacent sections of real property in rural Pima County comprising the Entrada property. The survey divided each section into sixteen, forty-acre parcels and depicted an

2

easement, later named Kolb Road by the county, along the eastern edge of the aligned sections. The one-page survey also contained a "Grant of Roadway and Utility Easement" stating, "First American Title Insurance Company of Arizona, an Arizona corporation, as Trustee, the owner of record of the property included in the easements shown hereon[,] hereby dedicate[s] these easements to the public for the use as such." A First American officer attested the survey.

¶3        The Pleaks, who own real property in a section abutting the eastern edge of the Entrada property, filed a three-count complaint requesting the trial court to declare that First American had dedicated the Kolb Road easement to the public, quiet title in the roadway "in trust for the public," and permanently enjoin Entrada from interfering with the Pleaks' use of the Kolb Road easement.[1] They also alleged the survey "constitute[d] a contract, express or implied, between [First American] and Pima County and members of the public" and argued, "as the successful parties in this action, [they were] entitled to recover their attorneys' fees pursuant to A.R.S. § 12-341.01." The Pleaks also requested attorney's fees pursuant to A.R.S. § 12-1103. Entrada filed a counterclaim asking the trial court to quiet title in the easement "as a private road" and to enjoin the Pleaks from using it.

¶4        The Pleaks moved for summary judgment, contending that First American had dedicated the easement to the public, both statutorily and pursuant to common law. Entrada filed a cross-motion for summary judgment. The trial court granted partial summary judgment in favor of Entrada on count one, finding that the survey did not constitute a statutory dedication of the roadway to the public and that, although First American had intended to dedicate the easement to the public, because the dedication had never been accepted, no common law dedication had

_____

[1]The Pleaks' complaint, the trial court's judgment, and, accordingly, the scope of our review are limited to addressing only the status of Kolb Road abutting Entrada's property.

3

occurred. The court also awarded Entrada their attorney's fees. After the court denied the Pleaks' motion for reconsideration, they appealed.

Statutory Dedication

¶5         Summary judgment is proper if the evidence presented by the party opposing the motion has so little probative value, given the required burden of proof, that reasonable jurors could not agree with the opposing party's conclusions. Ariz. R. Civ. P. 56(c)(1), 16 A.R.S., Pt. 2; Orme School v. Reeves, 166 Ariz. 301, 802 P.2d 1000 (1990). In reviewing a grant of summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court erred in applying the law. Bothell v. Two Point Acres, Inc., 192 Ariz. 313, 965 P.2d 47 (App. 1998).

¶6         We first address the Pleaks' contention that summary judgment was erroneous because the survey constituted a statutory dedication of the roadway. The Pleaks admit the survey does not meet the requirements of A.R.S. § 11-806.01 as a plat depicting a subdivision under the county's jurisdiction, see A.R.S. § 32-2101(54) (defining "subdivision"), but contend the survey fulfills the requirements of A.R.S. § 9-254. That section provides:

> Upon filing a map or plat, the fee of the streets, alleys, avenues, highways, parks and other parcels of ground reserved therein to the use of the public vests in the town, in trust, for the uses therein expressed. If the town is not incorporated, then the fee vests in the county until the town becomes incorporated.

Whether the statute can serve as the basis for any dedication of the easement here is a question of law subject to our de novo review. See State v. C & H Nationwide, Inc., 179 Ariz. 164, 876 P.2d 1199 (App. 1994).

¶7         Our principal goal in interpreting a statute is to discern legislative intent. Moore v. Browning, 203 Ariz. 102, 50 P.3d 852 (App. 2002). The clearest indication of legislative

4

intent is a statute's language. Lowing v. Allstate Ins. Co., 176 Ariz. 101, 859 P.2d 724 (1993). But we may nonetheless limit the scope of an otherwise unambiguous statute to conform to the statutory scheme in which the statute is found. See Estate of Hernandez v. Arizona Bd. of Regents, 177 Ariz. 244, 866 P.2d 1330 (1994); Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist., 202 Ariz. 107, 41 P.3d 645 (App. 2002). And, although title and section headings of statutes are not law, we may look to them for guidance. Florez v. Sargeant, 185 Ariz. 521, 917 P.2d 250 (1996).

¶8        Section 9-254 lies within Title 9 (titled "Cities and Towns"), Chapter 2 (titled "Form of Government"), Article 3 (titled "Town Incorporated under Common Council Government"). Section 9-251, A.R.S., provides in part, "[w]hen a town is laid out, the proprietors of the town shall cause to be made an accurate plat or map thereof . . . ." The maps required under § 9-251 must be acknowledged and filed with the county recorder and with the town clerk. A.R.S. § 9-252. These headings and statutes clearly encompass only issues affecting cities and towns and strongly suggest the legislature did not intend § 9-254 to apply to land such as Entrada's, which lies entirely outside the shadow of any municipality's corporate boundaries.

¶9        Our supreme court reached this same result with respect to § 9-254's predecessor statute in County of Yuma v. Leidendeker, 81 Ariz. 208, 303 P.2d 531 (1956).[2] There, the owner of a forty-acre parcel had recorded a plat that subdivided a property into ten blocks. A reference

---

[2]Section § 611, Rev. Stat. Ariz. (1901), provided:

> Upon the filing of any such map or plat, the fee of all streets, alleys, avenues, highway[s], parks and other parcels of ground reserved therein to the use of the public, shall vest in such city or town, if incorporated, in trust, for the uses therein named and expressed; or if such town be not incorporated, then in the county until such town shall become incorporated, for the like uses.

on the plat stated one block was dedicated to the public for use as a park. Over forty years later, the block's successor owner sought to have the dedication declared ineffective or the public's interest deemed abandoned. In addressing the applicability of § 9-254's predecessor, the supreme court concluded that, based on the statutory scheme, the legislature had intended it to apply only to property either within a municipality or adjacent to and part of a proposed addition thereto. Because the property had been neither at the time the plat was recorded, the court held the statute did not apply. As in Leidendeker, the record here does not show that, when First American recorded the survey, Entrada's property lay either within a municipality or a proposed addition to a municipality. We therefore conclude § 9-254 is not a viable basis for finding a statutory dedication of Entrada's property.

### Common Law Dedication

¶10        The Pleaks alternatively ask us to find that the survey established a common law dedication of the Kolb Road easement to the public. Such a "[d]edication is the intentional appropriation of land by the owner to some proper public use." Allied Am. Inv. Co. v. Pettit, 65 Ariz. 283, 287, 179 P.2d 437, 439 (1947). "The right conferred by common law dedication is only an easement." 26 C.J.S. Dedication § 2 (1991); see also Moeur v. City of Tempe, 3 Ariz. App. 196, 412 P.2d 878 (1966). "An intent to dedicate must be clearly shown and the burden of proof of establishing a dedication is on the one asserting it." Lacer v. Navajo County, 141 Ariz. 396, 402, 687 P.2d 404, 410 (App. 1983).

¶11        Entrada contends Arizona courts no longer recognize common law dedication of roadway easements, citing Burlington Northern & Santa Fe Railway Co. v. Arizona Corp. Commission, 198 Ariz. 604, 12 P.3d 1208 (App. 2000). The Pleaks point out that Entrada failed to raise this argument before the trial court, suggesting it is therefore waived on appeal. See

6

Souza v. Fred Carries Contracts, Inc., 191 Ariz. 247, 955 P.2d 3 (App. 1997). We nevertheless exercise our discretion to address it because it is an important issue bearing on the disposition of this appeal. See Bank One, Arizona v. Rouse, 181 Ariz. 36, 887 P.2d 566 (App. 1994); see also Nestle Ice Cream Co. v. Fuller, 186 Ariz. 521, 924 P.2d 1040 (App. 1996).

¶12 Arizona courts follow the common law to the extent it is "not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state." A.R.S. § 1-201; see also Berthot v. Security Pac. Bank of Arizona, 170 Ariz. 318, 823 P.2d 1326 (App. 1991). If possible, we construe statutes consistently with the common law. Unless the legislature has clearly manifested its intent to do so either expressly or by necessary implication, we will not find the legislature has abrogated the common law. United Bank of Ariz. v. Mesa N.O. Nelson Co., 121 Ariz. 438, 590 P.2d 1384 (1979); see also Wyatt v. Wehmueller, 167 Ariz. 281, 806 P.2d 870 (1991).

¶13 In Burlington, pursuant to its statutory authority to determine whether crossings at "public roads or streets" are necessary, A.R.S. § 40-337(C), the Arizona Corporation Commission had ordered the plaintiff railway company to maintain a road crossing it had intended to close. On appeal, the company challenged the commission's jurisdiction, arguing the road was not a public road. Although the road had never been "established by any governmental entity as a public road," Burlington, 198 Ariz. 604, ¶5, 12 P.3d 1208, ¶5, the commission argued that a history of public use had prescriptively established it as a public roadway. Division One of this court rejected the commission's arguments, noting that "Arizona courts have repeatedly interpreted Arizona law as providing that public roads and highways can only be established as provided by statute and not by other means such as prescriptive use." Id. at ¶18. The court further stated:

7

> We have found one case suggesting that public roads may be established by "common-law dedication and acceptance." Rodgers v. Ray, 10 Ariz. App. 119, 121, 457 P.2d 281, 283 (1969). Rodgers, however, relies on Allied American Investment Co. v. Pettit, 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947), in which the issue was whether a subdivision plot was properly dedicated as a public park. We find Rodgers entirely unpersuasive on this point.

Burlington, 198 Ariz. 604, n.2, 12 P.3d 1208, n.2.

¶14 The Pleaks ask us to reject this statement in Burlington as constituting no more than dictum, citing several cases that, they argue, have recognized common law dedications of public roadway easements. Avery v. Drane, 77 Ariz. 328, 271 P.2d 480 (1954); Drane v. Avery, 72 Ariz. 100, 231 P.2d 444 (1951), overruled in part on other grounds, Chadwick v. Larsen, 75 Ariz. 207, 254 P.2d 1010 (1953); Edwards v. Sheets, 66 Ariz. 213, 185 P.2d 1001 (1947); Thorpe v. Clanton, 10 Ariz. 94, 85 P. 1061 (1906). But in each of these cases, as the Pleaks acknowledge, the dedication at issue occurred before the enactment of the Arizona Revised Statutes of 1901, when the legislature "changed the law so that, thereafter, 'in Arizona, "public highways" are limited to those established in the manner provided by law and to no others.'" Burlington, 198 Ariz. 604, ¶20, 12 P.3d 1208, ¶20, quoting State ex rel. Herman v. Cardon, 112 Ariz. 548, 549, 544 P.2d 657, 658 (1976).

¶15 The Pleaks maintain, however, that a roadway such as the Kolb Road easement here is neither a "public highway" nor a private road and suggest that, as the amicus curiae frames the issue, there "exists a class of roads which are public, in the sense that the public has a right to use them, but which the government has not yet committed to maintain. These latter roads may be established by common law . . . but [that law] impose[s] no burden on anyone to maintain [them]." Notwithstanding Entrada's suggestion to the contrary, the issue of maintenance is not

8

before us, and we limit our discussion to whether Arizona law permits the dedication of a roadway easement to the public by other than statutory means.

¶16 The Pleaks rely on Leidendeker for their contention that a roadway easement can be dedicated to the public under the common law. As discussed earlier, our supreme court found in that case that recording a plat had not effectuated a statutory dedication within the meaning of § 9-254 of property situated outside any municipality's actual or proposed boundaries. The court then addressed whether a common law dedication had occurred, noting the common law rule that

> the mere act of surveying land into lots, streets, and squares by the owner, and the recordation of such plat, constituted an offer to dedicate and was subject to revocation by the dedicator until it was accepted, but the mere act of selling lots with reference to such plat resulted in an immediate and irrevocable common law dedication of areas delineated thereon for public purposes.

Leidendeker, 81 Ariz. at 213, 303 P.2d at 535. Applying that rule, the court held that the park had been dedicated to the public because the owner of the land had recorded the plat with language purporting to do so and had sold lots referring to the recorded plat.

¶17 The supreme court addressed a similar question more than sixty years earlier in Evans v. Blankenship, 4 Ariz. 307, 39 P. 812 (1895). There, the owner of a parcel had recorded a plat on which a parcel was labeled "Public Grounds." Id. at 313, 39 P. at 812. Referring to Archer v. Salinas City, 28 P. 839 (Cal. 1892), for the principle that the sale of property referring to a plat containing a dedication to the public constitutes acceptance of a common law dedication, the court held that reference to the park in the plat coupled with the owner's sale of parcels referring to the plat constituted a dedication of the park. Indeed, the United States Supreme Court noted long before Evans that dedication of property to public use is a "well-established principle of the common law." Mayor of New Orleans v. United States, 35 U.S. (10 Pet.) 662, 712, 9

9

L. Ed. 573, 593 (1836). Moreover, the Court also noted "[i]t is not essential that th[e] right of use [of property dedicated to the public] should be vested in a corporate body; it may exist in the public, and have no other limitation than the wants of the community at large." Id. at 713, 9 L. Ed. at 593. Thus, under the common law, it is unnecessary that the title of property dedicated to the public vest in a governing body for its use to actually be dedicated to the public. Such a notion in the common law is distinct from statutory dedication under either § 9-254 or § 11-806.01, in which title to a public roadway vests in trust in a governing body.

¶18    Citing among other cases Cardon, and Champie v. Castle Hot Springs Co., 27 Ariz. 463, 233 P. 1107 (1925), and acknowledging that common law dedication of property is generally allowed, Entrada nonetheless contends that Arizona has rejected the common law method of dedicating roadway easements. We disagree that those cases necessarily so hold. The defendants in Cardon owned business property off a road in an unincorporated town. The state and Gila County sued the defendants after they destroyed a portion of a curb the state had constructed along the road to allow automobile access to their property. In affirming the trial court's denial of relief, our supreme court noted that the county was empowered only to expend public money on "public highways." The court also noted that, pursuant to then A.R.S. § 18-209(B), although the county had authority to designate roads and streets within unincorporated area as public highways, it had not so designated the roadway at issue. The court concluded the road was not a public highway "in the restricted sense . . . [of] streets, roads or ways accepted by the governing authority upon which public monies could be expended without limitation," Cardon, 112 Ariz. at 551, 544 P.2d at 660, and held that, because the county had not been authorized to construct the curb on the road, the defendants were entitled to remove it. In reaching its conclusion, the court relied on the statutory definition of a "public highway," as distinguished from its common law definition,

10

namely, a "'way common and free to all the king's subjects to pass and repass at liberty.'" Id., quoting House-Wives League, Inc. v. City of Indianapolis, 185 N.E. 511, 513 (Ind. 1933), quoting State v. Berdetta, 73 Ind. 185, 185 (1880). Although the court said, "[I]n Arizona[,] 'public highways' are limited to those established in the manner provided by law and to no others," Cardon, 112 Ariz. at 549, 544 P.2d at 658, that statement was by implication limited to the statutory definition of "public highways." Because we address only the Pleaks' argument that First American created a common law public roadway and because the court in Cardon made no pronouncement on the continuing viability of such roadways, we find Cardon inapposite.

¶19        In Champie, the plaintiff had filed a trespass action against the defendant, alleging he competed with the plaintiff's stables by bringing horses onto the plaintiff's property and renting them to the plaintiff's customers. The trial court permanently enjoined the defendant from taking his horses onto the plaintiff's property despite his claim that the property was a public road created by prescription. On review, the supreme court rejected the notion that public roadways could be created by prescription. Although, as Entrada points out, the court stated that the only method of establishing public roads was statutory, that statement does not preclude a finding of common law dedication of a public roadway, not only because the issue was not before the court, but also because the court expressly affirmed its previous holding in Territory v. Richardson, 8 Ariz. 336, 76 P. 456 (1904).

¶20        There, the defendants were charged with digging up a private way. In affirming the trial court's sustaining of the defendants' demurrer, the supreme court addressed the definitions of public highway and private way, noting that, in 1901, the legislature had declared "vacated" all roads within the territory that were not public highways. The court held that, by doing so, the legislature had not automatically made vacated roads into private ways but had instead created,

11

in addition to public highways and private ways, a third class of roads within the state, namely, "roads established without authority [of law] for the convenience of individuals, and without a legal status either as public highways or private ways." Id. at 339-40, 76 P. at 457. Thus, roadways that have been dedicated to the public, see New Orleans, but have not been accepted by a government body, see §§ 9-254, 11-806.01, fall within the ambit of public roads under Richardson. Accordingly, the common law dedication of roadways is not inconsistent with the statutory methods for creating public highways, and we conclude that parties to land transfers may still employ the common law to dedicate public roadway easements. See § 1-201; Berthot.

¶21   We therefore turn to the Pleaks' argument that Entrada's predecessor in interest, First American, effected a common law dedication of the Kolb Road easement. The Pleaks maintain that under Leidendeker and Evans, once a "plat" purporting to dedicate land to the public had been recorded, the sale and purchase of parcels referring to that plat constituted effective acceptance of the dedication as it pertains to members of the public at large. The trial court, however, found that the survey here did not constitute a plat, noting that, whereas a plat under § 11-806.01 requires "not only exact dimensions, but also water and sewage plans, as well as approval by the county's legislative body," the survey here "only sets forth a general description of the land, describing the boundaries of a large tract of land." But in its brief on appeal, Entrada acknowledges the survey "may constitute a plat for purposes of meeting [the] requirements associated with a common-law dedication." We agree. See Transamerica Title Ins. Co. v. Cochise County, 26 Ariz. App. 323, 548 P.2d 416 (1976) (statute enumerating requirements of plat recorded in county jurisdiction inapplicable to division of land into parcels of 36 acres or more); Black's Law Dictionary 1151 (6th ed. 1990) (defining "plat" as "[a] map of a specific land area such as a . . . subdivision showing the location and boundaries of individual parcels of land

12

subdivided into lots, with streets, alleys, easements, etc., usually drawn to a scale"); see also Ten Z's Inc. v. Perry, 166 Ariz. 203, 204, 801 P.2d 438, 439 (App. 1990) (in addressing adequacy of legal description in trustee's sale, "[t]he crucial question to be answered is whether a member of the public who saw the notice in question would be able, without difficulty, to determine what property was being noticed for sale").

¶22    Entrada nevertheless contends that, even "if appellant's legal theory can be sustained under Arizona law," questions of fact remain as to whether the survey "established an intent to dedicate" the Kolb Road easement. The trial court, however, expressly found that First American had recorded the survey with the intent "to dedicate a seventy-five foot strip of land for a roadway and utility easement." Entrada failed to make this argument or controvert the Pleaks' factual assertion below, adopted by the trial court, and thereby waived the issue on appeal. See United Bank of Arizona v. Allyn, 167 Ariz. 191, 805 P.2d 1012 (App. 1990) (party opposing summary judgment must respond with facts showing genuine issue if movant offers evidence demonstrating entitlement to summary judgment); see also Napier v. Bertram, 191 Ariz. 238, 239, 954 P.2d 1389, 1390 (1998) ("Ordinarily, courts should not consider new factual theories raised for the first time on appeal from summary judgment or judgment on the pleadings."). Absent such questions of fact, the survey here defined the Kolb Road easement with sufficient specificity to demonstrate an intent to "dedicate these easements to the public for the use as such."

¶23    The trial court also found that, although Entrada had purchased parcels of land, the general public had never accepted the dedication. Entrada agrees, asserting that a dedication is not accepted by the public until both the purchasers of land and the general public accept it, citing three cases from other jurisdictions. City of Santa Clara v. Ivancovich, 118 P.2d 303 (Cal. Ct. App. 1941) (recorded plat purporting to dedicate roadway to public was invalid attempted

13

dedication because only one of two purchasers had signed deed conveying property); Litvak v. Sunderland, 353 P.2d 381 (Colo. 1960) (attempt to accept roadway made more than sixty years after dedication held ineffective); Houghton v. Woodley, 313 S.E.2d 225 (N.C. Ct. App. 1984) (member of public may acquire rights to roadway dedicated by plat only upon government's acceptance of dedication). We note that these cases are readily distinguishable from the one at hand and that only Houghton appears to provide Entrada any support. More importantly, our supreme court has adopted a contrary view, allowing the sale of property to constitute acceptance by the public. Leidendeker; Evans. Thus, Entrada's cases are inapposite. See City of Phoenix v. Leroy's Liquors, Inc., 177 Ariz. 375, 868 P.2d 958 (App. 1993) (court of appeals bound by controlling decisions of supreme court). Accordingly, under Arizona law, Entrada's purchase of land referring to the recorded survey and the delineated Kolb Road easement completed the common law dedication of the roadway easement.

¶24       We disagree with Entrada that this result "forces private landowners to provide public access to property they don't own, so long as they want access to their own property." Instead, our decision merely confirms and effectuates First American's attempt to attract purchasers by creating a public easement allowing access to its rural land. It is also consistent with the purchasers' knowledge that First American had, according to the survey, "dedicate[d] these easements to the public for the use as such." Because dedication of the Kolb Road easement was complete upon the sale of lots referring to the recorded survey, see Richardson, the trial court erred in granting summary judgment in Entrada's favor.

Attorney's Fees

¶25       The Pleaks contest the trial court's authority to award attorney's fees against them pursuant to § 12-341.01, arguing in direct contravention of the position they took in their

14

complaint. But because Entrada is not the prevailing party, we vacate the trial court's award of attorney's fees.

Disposition

¶26 The trial court's order granting Entrada partial summary judgment and attorney's fees is reversed, and the case is remanded for further proceedings consistent with this decision. At oral argument, the Pleaks urged that we also direct the trial court to enter summary judgment in their favor. Although the denial of summary judgment is generally neither appealable nor subject to review, we may in certain limited circumstances reverse a trial court's denial of summary judgment. See Bothell v. Two Point Acres, Inc., 192 Ariz. 313, 965 P.2d 47 (App. 1998). We decline to do so here, however, because of the remaining counts requiring resolution by the trial court. In our discretion, we deny the Pleaks' request for attorney's fees on appeal made pursuant to § 12-1103.

_____
PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge.


_____
WILLIAM E. DRUKE, Judge (Retired)