SUPREME COURT OF ARIZONA
En Banc

ROBIN R. PLEAK and AUDREY PLEAK, ) Arizona Supreme Court
husband and wife; and MICHAEL T. ) No. CV-03-0310-PR
SHURTLIFF and ANN SHURTLIFF, )
husband and wife, ) Court of Appeals
) Division Two
    Plaintiffs/Appellants, ) No. 2 CA-CV 01-0100
)
      v. ) Pima County
) Superior Court
ENTRADA PROPERTY OWNERS' ) No. C20001553
ASSOCIATION, an Arizona )
non-profit corporation; PALO )
SECO CORPORATION, an Arizona ) **O P I N I O N**
corporation; BETTY C. BRITTON, )
an unmarried woman; JUAN A. )
SOMOZA, an unmarried man; TRES )
PIEDRAS, L.L.C., an Arizona )
limited liability corporation; )
STEVE V. THILL, an unmarried )
man; CINDY D. BEGNER, an )
unmarried woman; EDNA C. STACK, )
an unmarried woman; CAROLINE )
DODGE, a married woman; MARY R. )
DERRICK, an unmarried woman; )
FLEET MORTGAGE CORP., a South )
Carolina corporation; DETLEF D. )
LANGE and SALLY F. LANGE, )
husband and wife; BGR, L.L.C., )
an Arizona limited liability )
company; and MORTON R. ROSEN, a )
widower, )
)
    Defendants/Appellees. )
)
_____ )

Appeal from the Superior Court of Pima County
The Honorable Jane L. Eikleberry, Judge

**VACATED AND REMANDED**
_____

Opinion of the Court of Appeals, Division Two
205 Ariz. 471, 73 P.3d 602

**AFFIRMED**
_____

GUST ROSENFELD, P.L.C.                                    Phoenix
     By:  Charles W. Wirken
Attorney for Plaintiffs-Appellants

LAW OFFICE OF MARK RUBIN, P.L.C.                          Tucson
     By:  Mark Rubin
LEWIS AND ROCA, L.L.P.                                    Tucson
     By:  John N. Iurino
          John Hinderaker
          Erin O. Simpson
Attorneys for Defendants-Appellees

MARISCAL, WEEKS, MCINTYRE & FRIEDLANDER, P.A.            Phoenix
     By:  Gary L. Birnbaum
          Michael S. Rubin
          David J. Ouimette
Attorneys for Amicus Curiae
Land Title Association of Arizona

MATTHEW J. SMITH, MOHAVE COUNTY ATTORNEY                 Kingman
     By:  John K. White, Deputy County Attorney
Attorneys for Amicus Curiae
Mohave County

_____

**H U R W I T Z**, Justice

¶1      The central issue in this case is whether Arizona continues to recognize common law dedications of roadway easements for public use.  We conclude that such common law

dedications remain viable, and that the dedication at issue in this case meets the requirements of the common law.

**I.**

¶2    On June 3, 1988, First American Title Insurance Company of Arizona recorded a "Record of Survey" for the Entrada development in rural Pima County.  The survey covered three adjacent sections of real property and divided each section into sixteen forty-acre parcels.  The survey depicts an easement along the eastern seventy-five foot edge of Entrada.  The survey also contains a "Grant of Roadway and Utility Easement" stating that First American, "the owner of record of the property included in the easements shown hereon[,] hereby dedicate[s] these easements to the public for the use as such."

¶3    The developer of Entrada then sold the lots created by the survey; each conveyance document expressly referred to the survey.  In 1988, the easement specified in the survey was a jeep trail used only by a rancher who had been grazing cattle on the property, and was impassable by conventional motor vehicles.  Access to the road was barred by a barbed wire fence.  In 1996, however, the Entrada Property Owners' Association improved the road.  In 1997, Pima County named the road Kolb Road, but in doing so expressly disavowed any responsibility for the road, and has never performed any improvement or maintenance on it.

**¶4**      Sycamore Canyon Estates is a development abutting the eastern edge of Entrada.   After Kolb Road was improved, the developer of Sycamore Canyon cut the fence to gain access to the improved road.   Sycamore Canyon property owners, including appellees Robin R. and Audrey Pleak, thereafter used the road to access their property.

**¶5**      The Pleaks and the other appellees (collectively, the "Pleaks") subsequently filed a three-count complaint, requesting the superior court to declare that First American had dedicated the Kolb Road easement to the public, quiet title in the roadway "in trust for the public," and permanently enjoin First American's successors in interest (collectively, "Entrada") from interfering with the use of the road.   The Pleaks argued that the dedication had occurred both statutorily and pursuant to common law.   Entrada counterclaimed, asking the superior court to quiet title in the easement "as a private road" and to enjoin the Pleaks from using it.

**¶6**      The superior court granted partial summary judgment to Entrada.   The court first rejected the argument that Kolb Road had been statutorily dedicated to public use pursuant to Arizona Revised Statutes ("A.R.S.") § 9-254 (2001) or A.R.S. § 11-806.01 (2001), finding that neither statute applied to the Entrada development.   The superior court also found no common law dedication, holding that although First American had intended to

4

dedicate the roadway to the public, the dedication had never been properly accepted. The court of appeals reversed. *Pleak v. Entrada Prop. Owners' Ass'n*, 205 Ariz. 471, 73 P.3d 602 (App. 2003). The court of appeals agreed with the superior court as to the absence of a statutory dedication, but found a valid common law dedication. *Id*. at 478 ¶¶ 23-24, 73 P.3d at 609.

¶7     Entrada petitioned for review, claiming that common law dedications of roadway easements for public use are no longer recognized in Arizona. Entrada's petition also argued that, even if common law dedications remain viable, the dedication in this case is ineffective because it has not been validly accepted. We granted review because these issues are of statewide importance. We exercise jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution, A.R.S. § 12-120.24 (2003), and Arizona Rule of Civil Appellate Procedure 23(c)(3).

## II.

### A.

¶8     Under the common law, an owner of land can dedicate that land to a proper public use. Restatement (Third) of Prop.: Servitudes § 2.18(1) (2000). Our cases have long recognized and applied this common law doctrine. *E.g., Evans v. Blankenship,* 4 Ariz. 307, 39 P. 812 (1895) (upholding common law dedication of a public park). The effect of a common law dedication is that

5

the public acquires an easement to use the property for the purposes specified, while the fee remains with the dedicator. *Allied Am. Inv. Co. v. Pettit*, 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947); *Moeur v. City of Tempe*, 3 Ariz. App. 196, 199, 412 P.2d 878, 881 (1966).

¶9     It was settled long ago in this state that the doctrine of common law dedication applies to the dedication of roadway easements for public use. *Thorpe v. Clayton*, 10 Ariz. 94, 99-100, 85 P. 1061, 1062 (1906). Entrada argues, however, that the common law was abrogated in the 1901 Territorial Code, and that since 1901, dedications of roadway easements for public use can only be made pursuant to a specific authorizing statute.[1]

¶10     The linchpin of Entrada's argument is paragraph 3956 of the 1901 Code, which provides:

> All roads and highways in the territory of Arizona which have been located as public highways by order of the board of supervisors, and all roads in public use which have been recorded as public highways, or which may be recorded by authority of the board of supervisors, from and after the passage of this title, are hereby declared public highways; and all roads in the territory of Arizona now in public use, which do not come within the foregoing provisions of this section, are hereby declared vacated . . . .

Ariz. Civ. Code ¶ 3956 (1901). Entrada reads this statute as providing that, from 1901 onward, there are only two categories

---

[1]     The Pleaks do not contest in this court the holdings below that there has been no valid statutory dedication of Kolb Road.

6

of roads — public and private — and the former can only be created pursuant to statute.

¶11      However, the central historical premise of Entrada's argument — that the 1901 Code abrogated the existing common law — is flawed.  Paragraph 3956 of the 1901 Code was simply a recodification of a provision first appearing, in substantially the same form, in the 1871 Code, Ariz. Civ. Code § 1 at 550 (1871), and subsequently recodified in the 1887 Code.  Ariz. Civ. Code ¶ 2736 (1887).  Therefore, if the 1901 Code were intended to abrogate the common law with respect to dedications of roadway easements for public use, the same would necessarily have been true of the 1871 and 1887 Codes.  Yet, in *Thorpe*, this court recognized the validity of an 1888 common law dedication of a roadway easement to public use, a result clearly precluded under Entrada's reading of paragraph 3956.  *See Thorpe*, 10 Ariz. at 99-100, 85 P. at 1062.

¶12      More importantly, Entrada's argument that paragraph 3956 abrogated the common law with respect to the dedication of roadway easements for public use fails as a matter of statutory construction.  Our statutes have long provided that the common law, except when "repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state . . . is adopted and shall be the rule of decision in all courts of this state."  1907 Ariz. Sess. Laws, ch. 10, § 8,

7

*codified at* A.R.S. § 1-201 (2002). Therefore, if the common law is to be changed or abrogated by statute, the legislature must do so expressly or by necessary implication. *See Wyatt v. Wehmuller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (citing *S.H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 73, 182 P.2d 931, 935 (1947)). Absent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with "every intendment in favor of consistency with the common law." *In re Thelen's Estate,* 9 Ariz. App. 157, 160-61, 450 P.2d 123, 126-27 (1969).

¶13      Paragraph 3956 does not manifest a clear intention by the legislature to abrogate the common law of roadway dedication to public use. Its first clause merely denominates certain roads as "public highways." As this court recognized in 1904, the phrase "public highways" in paragraph 3956 was meant simply to describe those roads "as come within the express provisions of the statutes declaring them to be such." *Territory v. Richardson,* 8 Ariz. 336, 339, 76 P. 456, 457 (1904)*; cf. State v. Cardon*, 112 Ariz. 548, 550, 544 P.2d 657, 659 (1976) (noting that "public highways" are those established by various statutory means). Nothing in this portion of paragraph 3956 suggests that landowners are somehow thereby prevented from dedicating their *privately owned* land to public use. *Cf. Moeur*, 3 Ariz. App. at 199, 412 P.2d at 881 (contrasting a valid

8

statutory dedication, in which the fee passes to a governmental entity, with a common law dedication, for which the fee remains with the dedicator).[2]

¶14     Nor does the final phrase of paragraph 3956, which provides that "all roads in the territory of Arizona now in public use, which do not come within the foregoing provisions of this section, are hereby declared vacated," abrogate the common law allowing dedications of roadway easements to public use. This portion of the statute merely declares certain existing roads in "public use" to be "vacated."  As the contemporaneous construction of paragraph 3956 in *Richardson* makes clear, this "vacation" simply meant that these roads could no longer be considered "public highways," not that they thereby reverted to solely private ways.  8 Ariz. at 340, 76 P. at 456.

¶15     Indeed, *Richardson* expressly recognized that "public highways" and "private roads" were not the only two categories of roads in the territory in 1904.  Rather, this court noted that "a way may be a road that is neither a public highway nor a

---

[2]     *See* A.R.S. § 9-254 (providing that upon filing of a map or plat for a town, the "fee of streets . . . reserved therein to the use of the public vests in the town, in trust, for the uses therein expressed"; if the town is not incorporated, then the "fee vests in the county until such time as the town becomes incorporated"); A.R.S. § 11-806.01(F) (providing that on recording of a plat for certain subdivisions, "the fee of streets . . . reserved to the use of the public vests in trust in the county for the uses and to the extent depicted on the plat"; in the event of "annexation by any city or town such fee automatically vests in the city or town").

private road or way, under our statutes." 8 Ariz. at 339, 76 P. at 457. *Richardson* therefore emphasized that "many, if not a majority, of the roads and ways running throughout all parts of the territory, and frequently in general public use, are neither public highways nor private ways." *Id.* This category of roads, as *Richardson* recognized, included roads where individuals had obtained an easement to pass over grounds owned by another, whether by grant or other means. *Id.* at 339, 76 P. at 457.

¶16     Moreover, Entrada's argument that paragraph 3956 was intended to abrogate the doctrine of common law road dedications for public use runs afoul of A.R.S. § 40-283(D) (2001). In pertinent part, that statute provides:

> A board of supervisors may authorize public service corporations, telecommunications corporations or cable television systems to construct a line, plant, service or system within the right-of-way of any road, highway or easement that is designated for access or public use by plat or survey of record of a subdivision, or of unsubdivided land as defined in § 32-2101, provided that any such authorization or construction pursuant to such authorization does not impose on the county the duty of maintaining the road or highway unless the county accepts the road or highway into the county maintenance system by appropriate resolution . . . .

¶17     Section 40-283(D) applies to roads "designated for . . . public use" by a plat or survey of "unsubdivided land." But, as the court of appeals correctly noted below, A.R.S. § 11-806.01(F), which authorizes dedications of roads and highways in those areas of a county lying outside municipal boundaries, only

10

applies to recorded plats of *subdivided* land. *Pleak*, 205 Ariz. at 473 ¶ 6, 73 P.3d at 604. Section 40-283(D) therefore implicitly assumes that a plat or survey filed under § 32-2101 covering unsubdivided land outside municipal boundaries can designate a roadway for public use — and subject the roadway to use by various utilities — even absent a statutory dedication to the county. That is precisely what occurred here. Indeed, if there were no such thing as a common law dedication of the roadway to public use, it is difficult to see how the legislature could empower the board to grant utility easements on such a roadway, the fee to which remains in private hands, without providing for compensation to the fee owner.

¶18    We therefore conclude that paragraph 3956 did not abrogate the settled common law allowing private landowners to dedicate roadway easements for public use. Entrada's suggestion that this conclusion is contrary to prior decisions of the court of appeals and this court, while finding some superficial support in isolated language from various cases, dissolves under closer examination. One case upon which Entrada relies, *Champie v. Castle Hot Springs Co.,* 27 Ariz. 463, 233 P. 1107 (1925), did not deal at all with the issue of common law dedication, but rather with whether a "public road" can be created through prescription. *Id*. at 466, 233 P. at 1108. In concluding that a "public road" can be created only by statutory means, this court

11

did not hold that a private landowner could not dedicate a roadway to public use. Indeed, *Champie* recognized that the roads at issue in that case were neither public roads nor private ways, but rather "fall squarely within the class described in *Territory v. Richardson* as 'without a legal status either as public highways or private ways.'" *Id. at* 467, 233 P. at 1108 (quoting *Richardson*, 8 Ariz. at 340, 76 P. at 457).

¶19    *Burlington Northern & Santa Fe Railway Co. v. Arizona Corporation Commission*, 198 Ariz. 604, 12 P.3d 1208 (App. 2000), the other case upon which Entrada primarily relies, did not deal at all with the ability of a private landowner to dedicate a roadway easement to public use. Rather, the issue in that case was whether a statute granting the Corporation Commission the power to regulate railroad crossings of "public roads" included roads on which there was a history of public use but no statutory dedication. The court of appeals correctly concluded that the statutory language was meant to describe only those roads first identified in *Richardson* as "public highways." *Id.* at 607-08 ¶¶ 13-21, 12 P.3d at 1211-12. The suggestion in a footnote in *Burlington Northern* that public roads may not be created by "common-law dedication and acceptance," *id.* at 608 ¶ 18 n.2, 12 P.3d at 1212 n.2, is thus dictum, but in any event gives no aid to Entrada's position. "Public roads," or those roads in which the fee is owned by governmental entities, cannot

12

be created except by statute, but this does not mean, as we have demonstrated above, that the common law doctrine allowing a private landowner to give the public an easement to pass over a privately owned road has somehow been abrogated under Arizona law.

**B.**

¶20    Having concluded that the common law still continues to allow a private landowner to dedicate a roadway easement to public use, we must now decide whether there was a valid dedication in this case.

¶21    An effective dedication of private land to a public use has two general components — an offer by the owner of land to dedicate and acceptance by the general public. *See Allied Am. Inv. Co.*, 65 Ariz. at 287, 179 P.2d at 439; Restatement (Third) of Prop.: Servitudes § 2.18(1).  No particular words, ceremonies, or form of conveyance is necessary to dedicate land to public use; anything fully demonstrating the intent of the donor to dedicate can suffice. *Allied Am. Inv. Co.*, 65 Ariz. at 287, 179 P.2d at 439.

¶22    In this case, given the unequivocal language in the Record of Survey, Entrada correctly does not dispute the existence of an offer to dedicate.  Rather it claims that the offer could not be accepted by the general public in the absence of public use and that the use by the Sycamore Canyon Estates

13

residents did not suffice. In response, the Pleaks argue that acceptance occurred as a matter of law once lots were sold in the Entrada subdivision.

¶23 Our cases discussing common law dedications of parks teach that the sale of lots referencing a recorded plat containing the dedication constitutes an "immediate and irrevocable" dedication. *County of Yuma v. Leidendeker*, 81 Ariz. 208, 213, 303 P.2d 531, 535 (1956) (holding that park was properly dedicated because the "mere act of surveying land into lots, streets, and squares by the owner, and the recordation of such plat, constituted an offer to dedicate and was subject to revocation by the dedicator until it was accepted, but the mere act of selling lots with reference to such plat resulted in an immediate and irrevocable common law dedication of areas delineated thereon for public purposes"); *Evans*, 4 Ariz. at 316, 39 P. at 814 (holding that dedication of park "certainly . . . had been accepted on the part of the public by those persons who had bought lots in the addition"). There is no dispute in this case that the lots in Entrada were sold after recordation of the Survey and that the conveyance documents specifically referred to the Survey. Therefore, if the rule announced in our prior cases with respect to parks applies, there has been an effective acceptance of common law dedication of Kolb Road to public use.

¶24     Entrada argues, however, for a different test for acceptance of common law dedications of roadway easements, requiring actual use by the general public before the road is effectively dedicated to public use.  That argument finds some support in the language of several cases.  *See Drane v. Avery*, 72 Ariz. 100, 102, 231 P.2d 444, 445 (1951) (stating that the recordation of a plat containing a dedication of streets, coupled with sale of lots, "constitutes a 'dedication,' and use thereof by purchasers of lots and the general public constitutes sufficient acceptance of the dedication"); *Edwards v. Sheets*, 66 Ariz. 213, 218, 185 P.2d 1001, 1004 (1947) ("The making and recordation of the plat coupled with sale of lots therein constituted the dedication.  The use by purchasers of lots and the general public constituted a sufficient acceptance.") (citations omitted).

¶25     However, neither of these cases actually held that use by the general public — as opposed to mere sale of lots pursuant to a recorded survey or plat — is a prerequisite to acceptance of a common law roadway easement dedication.  In *Drane*, the parties conceded that there was a valid and effective dedication; and the only dispute before this court was over the plaintiffs' standing to sue and whether the suit was barred by laches.  72 Ariz. at 102-03, 231 P.2d at 445-46.  In *Edwards* the issue was whether the appellants had obtained title by

15

prescription to a street dedicated as a public road. 66 Ariz. at 215-18, 185 P.2d at 1002-04. The sufficiency of the acceptance simply was not an issue in either case.[3]

¶26 On the merits, we find unpersuasive Entrada's invitation to adopt a different rule with regard to common law dedications of roads than for dedications of parks. As a preliminary matter, it is not clear, as Entrada argues, that roadway easements involve a greater financial burden to the dedicator than other public use easements such as parks. But more importantly, Entrada's proposed rule, which would require proof of actual use by the public before finding an effective dedication of a common law roadway easement, would inevitably result in detailed case-by-case inquiries regarding whether and how the public had used a particular roadway. This would inject uncertainty into property law, where predictability is

---

[3] As a technical matter, neither of the cited cases appears to have involved a common law dedication, because in each case, this court noted that that the fee to the roadway was held by the county. *Drane*, 72 Ariz. at 101, 231 P.2d at 445 (noting that the fee to the roadways had passed to the county); *Edwards*, 66 Ariz. at 218, 185 P.2d at 1004 (noting that title to streets at issue had passed to the county); *see also Avery v. Drane,* 77 Ariz. 328, 334, 271 P.2d 480, 484 (1954) (noting that streets at issue in the prior *Drane* opinion had been dedicated to the county). However, as we have previously stated, the statutes governing dedications generally "contemplate the common law modes of dedication." *Leidendecker,* 81 Ariz. at 213, 303 P.2d at 535. Therefore, cases dealing with statutory dedications can be useful in determining whether the elements of a common law dedication are present.

16

paramount.[4] The better approach is to treat acceptance of common law dedications of areas for public use consistently, whether they involve a park, a road, a public plaza, or some other public space.

¶27    Entrada also suggests that it is unfair to give the public use of a roadway constructed by a private landowner at its own expense.[5] But this is a dilemma entirely of Entrada's own making. If its predecessor did not intend for the public at large to have access to Kolb Road, or wanted that access limited to trips within the borders of Entrada, it could have so provided within its dedication. The landowner could alternatively have dedicated a roadway easement that did not extend to the borders of Entrada, thus requiring anyone attempting to access the road to pass over clearly private property not subject to the easement. First American, however,

---

[4]    For example, in the case at hand, the superior court concluded that there had been no public use of the road, and hence no acceptance, because the road was fenced until 1996. It is clear, however, that members of the public, including those residing in Sycamore Canyon Estates, regularly used Kolb Road after it was improved in 1996. If Entrada's position were adopted, courts would be required in situations like this to determine how much public use was required to constitute an acceptance of a dedication, and precisely when that public use had to take place.

[5]    This case presents no issue as to Entrada's obligations, if any, with respect to the initial improvement and subsequent maintenance of the roadway easement, and we express no opinion on those subjects.

17

dedicated the roadway easement unrestrictedly to "the public," and placed the easement so that those in the Sycamore Canyon Estates development could access the roadway without first passing over any of Entrada's private property. If developers wish to avoid the consequences about which Entrada today complains, they need only exercise greater care in drafting dedicatory language regarding the scope or location of roadway easements in plats or surveys of record.

### III.

¶28　We therefore conclude that the court of appeals correctly held that common law dedications of roadway easements for public use are viable in Arizona, and that such a dedication was validly made in this case. We affirm the opinion below, and remand to the superior court for further proceedings consistent with this opinion.[6]

_____
Andrew D. Hurwitz, Justice

---

[6]　The Pleaks seek attorneys' fees pursuant to A.R.S. § 12-1103(B) (2001). This statute, which allows for recovery of costs in actions to quiet title if the defendant refuses upon request to execute a quit claim deed to the plaintiff, does not apply to this case. As noted above, a common law dedication of a roadway easement to public use leaves fee title to the roadway in the landowner, and Entrada therefore properly refused in this case to issue a quit claim deed to the Pleaks.

18

CONCURRING:

_____
Charles E. Jones, Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
John C. Gemmill, Judge[*]

_____

[*]The Honorable Ruth V. McGregor recused herself; pursuant to Article VI, Section 3, of the Arizona Constitution, the Honorable John C. Gemmill, Judge of the Court of Appeals, Division One, was designated to sit in her stead.

19